**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JAMES PRINCIPE, )
         )
 Plaintiff, )
         )   Case No. 20 cv 01545
 v. )
         )   Honorable Marvin E. Aspen
VILLAGE OF MELROSE PARK, et al., )
         )
 Defendants. )

## MAYOR RONALD SERPICO'S PARTIAL ANSWER TO PLAINTIFF'S COMPLAINT

Defendant, RONALD SERPICO, by and through his attorney, K. Austin Zimmer of DEL GALDO LAW GROUP, LLC, in answer to Plaintiff's Complaint, states:

## NATURE OF ACTION

1. Plaintiff, an individual with a disability, brings this action to correct the unlawful employment practices on the basis of discrimination, retaliation, and violation of VMP ordinances perpetrated against him by Defendants Serpico, Piemonte, and the VMP.

**ANSWER: Defendant denies the allegations contained in Paragraph 1 of the Complaint.**

2. Plaintiff alleges that Defendant Serpico created a hostile work environment based on Plaintiff's disability by calling him a "*retard*" and swearing at him using derogatory words such as "*cunt*" and "*motherfucker*." Plaintiff reported this misconduct to human resources, hired an attorney, and filed a charge of disability discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR").

**ANSWER: Defendant denies any wrongdoing as alleged in Paragraph 2 of the Complaint. Defendant admits that Plaintiff hired an attorney and filed a charge of disability**

1

discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR").

3.      Defendants responded with a series of retaliatory acts that included stripping him of his responsibilities; cutting off access to his work cell phone, Email, and remote login; initiating an internal investigation against him; and ultimately terminating him.

**ANSWER:    Defendant denies that he responded with a series of retaliatory acts as described in Paragraph 3 of the Complaint. Defendant admits that Plaintiff was terminated based on Plaintiff's own misconduct.**

4.      Plaintiff seeks all remedies including injunctive and declaratory relief, reinstatement, compensatory damages, punitive damages, back pay and front pay, pre-judgment interest, punitive damages, and attorneys' fees and costs for Defendants' violations of his rights.

**ANSWER:    Defendant denies Plaintiff is entitled to any remedies and relief but admits that Plaintiff is seeking the items as stated in Paragraph 4 of the Complaint.**

## JURISDICTION & VENUE

5.      This Court has jurisdiction of the action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. §§ 1331, 1343, and the United States Constitution; it also has supplemental jurisdiction under 28 U.S.C. § 1367. This Complaint avers any and all available ADA statutory claims.

**ANSWER:    Defendant admits only that this Court has jurisdiction over the Counts being answered in the partial answer to the Complaint.**

6.     This Court has jurisdiction to award attorney's fees under 42 U.S.C. § 1988 and under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

**ANSWER:     Defendant admits the Court has jurisdiction to award attorney's fees under 42 U.S.C. § 1988. Defendant denies that the Court currently has jurisdiction to award attorney's fees under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.**

7.     Venue is proper under 28 U.S.C. § 1391 because the employment practices hereafter alleged to be unlawful were committed within the jurisdiction of the Northern District of Illinois.

**ANSWER:     Defendant admits that venue is proper for the counts not subject to a Motion to Dismiss.**

8.     Plaintiff filed a charge of discrimination (Charge No. 440-2020-02681) against Defendants with the EEOC. In his EEOC Charge, Plaintiff asserts that he was discriminated against and retaliated against because of his disability and the exercise of protected activity under the ADA Plaintiff requested his Right to Sue notice, but as of the date of filing, he has not received it.

**ANSWER:     Defendant admits that Plaintiff filed a charge of discrimination with the EEOC and that he has not received his right to sue letter.**

<u>**PARTIES**</u>

9.     Principe is a resident of Melrose Park. He was employed as a full-time employee at the VMP for 22 years until his unlawful termination on February 13, 2020.

**ANSWER:     Defendant admits that Principe is a resident of Melrose Park. Defendant admits that Plaintiff was a full-time employee with the Village of Melrose Park for 22 years until February 13, 2020. Defendant denies that Plaintiff was unlawfully terminated.**

10. Defendant Village of Melrose Park is an Illinois municipal corporation doing business in the Northern District of Illinois. The Defendant at all times has employed more than fifteen (15) persons on each working day for 20 or more calendar weeks in the current and preceding year, is and has been a "person" and "employer" as defined under the ADA, Title VII, and the Illinois Human Rights Act, and is accordingly subject to the provisions of each said act.

**ANSWER: Defendant admits the allegations contained in Paragraph 10 of the Complaint.**

11. Defendant Ronald Serpico is an elected official that has served as the Mayor of the VMP for over 20 years. Throughout his tenure, he has served on various local and state boards including currently serving as a commissioner for the Illinois Court of Claims. Defendant Serpico is also an attorney with a private practice within the VMP. Defendant Serpico is a final policymaker and serves as the chief executive officer of the VMP. Defendant Serpico engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

**ANSWER: Defendant admits that he is an elected official that has served as the Mayor of the VMP for over 20 years. Defendant admits that Serpico, along with the VMP Board of Trustees, are final policymakers. Defendant denies that he engaged in any of the unlawful conduct complained of in the Complaint. Defendant admits that any actions that he took were proper and under the color of law. Defendant admits that he is sued in his individual capacity but denies any wrongdoing.**

12. Defendant Christine Piemonte is the Director of Human Resources. She engaged in the conduct complained of while acting under the color of law and is sued in her individual capacity.

**ANSWER: Defendant admits that Christine Piemonte is the Director of Human Resources. Defendant denies that Piemonte engaged in the conduct complained of in the Complaint. Defendant admits that Piemonte is sued in her individual capacity and any actions that she took within the scope of her employment was under the color of law.**

## FACTUAL ALLEGATIONS

13. Plaintiff James Principe is a lifelong resident of Melrose Park. The Principe family is a prominent, well-respected family that is deeply rooted in the Melrose Park community.

**ANSWER: Defendant admits that Principe is a lifelong resident of Melrose Park. Defendant lacks sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 13 of the Complaint.**

14. During the course of his 22 years of employment with Defendant VMP, Plaintiff held several positions with the VMP and most recently, the position of Director of Information Technology.

**ANSWER: Defendant admits the allegations contained in Paragraph 14 of the Complaint.**

15. Plaintiff is "disabled" as defined by the ADA, 42 U.S.C.A. § 12102(2) with a record of a mental disability, *to wit*: post-traumatic stress disorder, anxiety, and panic disorder with agoraphobia (collectively "disability"), which must be treated with daily medication.

**ANSWER: Defendant denies that Plaintiff is "disabled" as defined by the ADA, 42 U.S.C.A. § 12102(2).**

16. These mental impairments substantially limit Plaintiff's major life activities such as sleeping, eating, thinking, concentrating, communicating with others, working, and traveling. Most significantly, because of Plaintiff's disability, he cannot leave the city limits of Melrose Park, and has not left there in over 20 years.

5

**ANSWER:**     **Defendant denies the allegations contained in Paragraph 16 of the Complaint.**

17.     At all times relevant, Plaintiff had been satisfactorily performing the true essential functions of his job for a substantial period of time prior to events giving rise to this Complaint.

**ANSWER:**     **Defendant denies the allegations contained in Paragraph 17 of the Complaint.**

18.     Each of the Defendants and other key administrators are aware of Plaintiff's disability.

**ANSWER:**     **Defendant lacks sufficient information as to what each "key administrator" is aware of regarding Plaintiff's alleged disability.**

19.     On numerous occasions between June 1, 2018 to January 30, 2020, Defendant Serpico bullied and created hostile working conditions for Plaintiff by making inappropriate comments about his disability, inappropriate sexual comments, and shouting profanities at Plaintiff (*infra*).

**ANSWER:**     **Defendant denies the allegations contained in Paragraph 19 of the Complaint.**

20.     On several occasions, Defendant Serpico referred to employees and residents of the VMP using derogatory or offensive language. For example, Defendant Serpico referred to certain female citizens as "*cunts*" or "*broads*," an Italian employee as a "*greaseball pussy*," and numerous other employees as "*cunts*," "*bitches*," and "*broads*."

**ANSWER:**     **Defendant denies the allegations contained in Paragraph 20 of the Complaint.**

21.     Because of and motivated by Plaintiff's disability, on or about June 2018, Defendant Serpico created a hostile work environment for Plaintiff, by swearing at him, cutting off his employee remote access login, deactivating his work Email account, threatening to fire him, and otherwise ostracizing him.

**ANSWER:**     **Defendant denies the allegations contained in Paragraph 21 of the Complaint.**

22.     For example, on or about June 11, 2018, Defendant Serpico demeaned Plaintiff by saying: "*Jimmy that fuckin retard with whatever the fuck his disease is*."

**ANSWER:     Defendant denies the allegations contained in Paragraph 22 of the Complaint.**

23.     Additionally, Plaintiff's office is in an area with heavy foot traffic and surrounded by windows. To minimize distractions, Plaintiff put up curtains in his office.

**ANSWER:     Defendant lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 23 of the Complaint.**

24.     Plaintiff's office door was locked by a passcode.

**ANSWER:     Defendant lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 24 of the Complaint.**

25.     Defendant Serpico became irate and ordered Plaintiff's office door to be removed at the hinges to remove said curtains.

**ANSWER:     Defendant denies the allegations contained in Paragraph 25 of the Complaint.**

26.     Defendant Serpico could have simply requested the passcode to open the door, but instead, he ordered the door removed the door at the hinges to embarrass Plaintiff.

**ANSWER:     Defendant denies the allegations contained in Paragraph 26 of the Complaint.**

27.     Plaintiff informed Defendant Serpico that he was subjecting him to abusive and offensive behavior, which embarrassed him.

**ANSWER:     Defendant denies the allegations contained in Paragraph 27 of the Complaint.**

28.     As a result, Plaintiff was placed on an extended medical leave by his treating physician for two months because of the heightened stress and anxiety that experienced while working in such a hostile work environment.

**ANSWER:     Defendant denies the allegations contained in Paragraph 28 of the Complaint.**

29.     In or around January 2020, Defendants subjected Plaintiff to a hostile and an unbearable work environment on an almost constant basis because of and motivated by Plaintiff's disability.

**ANSWER:     Defendant denies the allegations contained in Paragraph 29 of the Complaint.**

30.     Beginning in or around January 2020, Defendant Serpico subjected Plaintiff to constant degrading and discriminatory comments on the basis of and motivated by his disability and that Defendant Serpico also sexually harassed Plaintiff.

**ANSWER:     Defendant denies the allegations contained in Paragraph 30 of the Complaint.**

31.     By way of example, Plaintiff was commonly referred to as a "*retard*," a "*motherfucker*," and a "*cunt*." Egregiously, Plaintiff was frequently subjected to offensive questions such as *"where are you going to get a job making as much money as you do with your 'condition'?"*

**ANSWER:     Defendant denies the allegations contained in Paragraph 31 of the Complaint.**

32.     A reasonable person with Plaintiff's disability would be offended by such statements.

**ANSWER:     Defendant denies that such statements were ever made.**

33.      At the same time, Defendant Serpico began reducing Plaintiff's work responsibilities and assigning them to Defendant Piemonte.

**ANSWER:     Defendant denies the allegations contained in Paragraph 33 of the Complaint.**

34.     In and around January 13, 2020, Defendant Ms. Piemonte manufactured a story that Plaintiff had brought a firearm to Village Hall and even pointed it at her. Although no such conduct by Plaintiff occurred, Piemonte threatened to call the police in furtherance of such a claim.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 34 of the Complaint.**

35.     Plaintiff is a licensed CCL holder, and has never brought his firearm into the workplace.

**ANSWER:    Defendant lacks sufficient knowledge regarding whether Plaintiff is a licensed CCL holder. Defendant denies that Plaintiff never brought his firearm into the workplace.**

36.     Piemonte also made negative comments about Plaintiff to his coworkers and asked them to document what she alleged was misconduct.

**ANSWER:    Defendant lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 36 of the Complaint.**

37.     Defendant Piemonte's false accusations and threats only further enhanced Plaintiff's stress and anxiety. Principe feared that if she acted on her threats that he could face criminal liability.

**ANSWER: Defendant denies the allegations contained in Paragraph 37 of the Complaint.**

38.     Later that day, Plaintiff met with Defendant Serpico to discuss his decreasing work responsibilities and hostile work environment created by Defendant Piemonte.

**ANSWER: Defendant admits that on or about January 13, 2020 Plaintiff met with Defendant Serpico. However, Defendant denies that the purpose of the meeting is as stated in Paragraph 38 of the Complaint; rather, Defendant asserts that the purpose of the meeting was to discuss Plaintiff's disruptive attitude at work.**

39.     Defendant Serpico falsely asserted that the VMP makes several accommodations for Plaintiff and other VMP employees with illnesses or disabilities: *"We made a lot of accommodations for you and I don't know what the correct word is if it's your phobias, your*

9

*anxiety, your mental illness, or whatever you want to call it. You have the ability to work close to home, correct? And you make a lot of money, correct? Where else would you go? Do you think all these accommodations would be made anywhere else? You would never make the kind of money elsewhere that you make here with your illness. Let me tell you something else. I have you with your 'problem.' I got Joey Rosa walking around in a diaper at 2311 Division Street. I got Billy Campanelli mother-fucking everyone around the Village. I was thinking about it the other day, what the fuck am I doing here?"*

**ANSWER:  Defendant denies that he falsely asserted that the VMP makes several accommodations for Plaintiff and other VMP employees with illnesses or disabilities.**

40.     Defendant Serpico then claimed that the reason why he gave Defendant Piemonte authority to sign checks was in preparation for Plaintiff's extended absence when his mother passes away.

**ANSWER:  Defendant asserts that the authority given to Piemonte was to be an additional signatory and that it was not specific to just checks.**

41.     Specifically, Defendant Serpico, who is not a medical doctor, told Plaintiff that: "*he didn't want to be the 'Doctor of Doom' but when I saw [Plaintiff's] mother, she was struggling, and it was obviously not going to be a good ending for her . . . I don't want to be presumptuous, but I'm going to presume that when the time comes, [Plaintiff] will react very badly to her death because he's dependent on his mother and may be out of the box for a while and I can't run the Village like that.*"

**ANSWER:  Defendant admits that he had a conversation with Plaintiff regarding Plaintiff's mother but lacks specific knowledge regarding the substance of that conversation.**

42.     In and around January 2020, Serpico summoned Plaintiff and another employee to his office.

**ANSWER:     Defendant lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 42 of the Complaint.**

43.     Defendant Serpico addressed Plaintiff, not by name, but by saying in a hostile manner: "*[y]ou in that blue thing, you better pay attention because this pertains to you.*"

**ANSWER:     Defendant denies the allegations contained in Paragraph 43 of the Complaint.**

44.     Serpico continued his rant by verbal reference to Plaintiff's disability in a derogatory manner and that conduct was not done privately, but in front of Plaintiff's colleague.

**ANSWER:     Defendant denies the allegations contained in Paragraph 44 of the Complaint.**

45.      Serpico questioned why Plaintiff's car was parked in the Village circular drive even though he (Serpico) previously gave him (Plaintiff) permission to park there.

**ANSWER:     Defendant admits that at some time Serpico questioned Plaintiff regarding his car being improperly parked in the Village circular drive but denies ever giving Plaintiff permission to park there.**

46.     Defendant Serpico blamed his diatribe on the "*Scatchell's*" who he claimed "*are watching everything that he does and will take pictures*" of Plaintiff's parked car.

**ANSWER:     Defendant denies the allegations contained in Paragraph 46 of the Complaint.**

47.     Plaintiff agreed not to park in that spot anymore.

**ANSWER:     Defendant lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 47 of the Complaint.**

48.     Not satisfied with just making fun of Plaintiff, on January 25, 2020, Defendant Serpico expanded his verbal harassment to include lude sexual harassment-type comments about

Plaintiff's future mother-in-law. Specifically, Serpico asked Plaintiff if his fiancé's mother "*was a looker*" (an attractive woman). He then said, "*if she's not attractive, you could always get a blow job from her*."

**ANSWER:      Defendant denies the allegations contained in Paragraph 48 of the Complaint.**

49.      Plaintiff felt uncomfortable and offended by Defendant Serpico's suggestion that he (Plaintiff) would ever be intimate with his fiancé's mother.

**ANSWER:      Defendant denies the allegations contained in Paragraph 49 of the Complaint because Defendant never stated the comments alleged in Paragraph 48.**

50.      On January 27, 2020, Defendant Serpico's automatic office door was partially ajar. He began yelling that "*[He's] had it with [Plaintiff] that little cunt . . .*" At that point, Plaintiff walked away because he did not want to hear anymore.

**ANSWER:      Defendant denies the allegations contained in Paragraph 50 of the Complaint.**

51.      These mounting hostilities came to a head on January 30, 2020 when Defendant Serpico again belittled Plaintiff by shouting profanities at him and degrading him on the basis of his disability including the following statements:

*a)*      "*where is that fucking retard going to get another job getting paid that much when he can't leave?"*

*b)*      "*and [Plaintiff] that little fucking cunt out there better keep his mouth shut*."

*c)*      "*the cunt-ness has to stop because I'm fucking tired of all these broads in Village Hall acting like a 'bunch of old ladies*.'"

*d)*      Calling Plaintiff a "*cunt*" and a "*motherfucker*" at least seven times that day.

**ANSWER:      Defendant denies the allegations contained in Paragraph 51 of the Complaint and its subparts.**

52.      Many of Plaintiff's colleagues overheard Serpico's profanity-laced tirades about him because Defendant Serpico yelled loud enough for everyone to hear.

**ANSWER:**     **Defendant denies the allegations contained in Paragraph 52 of the Complaint.**

53.     Defendant Serpico's outbursts were aggressive, hostile, and humiliating.

**ANSWER:**     **Defendant denies the allegations contained in Paragraph 53 of the Complaint.**

54.     Defendant Serpico's behavior created a hostile work environment for Plaintiff, causing him emotional distress and diverting his focus away from work responsibilities.

**ANSWER:**     **Defendant denies the allegations contained in Paragraph 54 of the Complaint.**

55.     Later that day, Plaintiff reported Defendant Serpico's ADA discriminatory conduct. Plaintiff did so both verbally and in writing to one of his supervisors. Plaintiff expressed that Serpico's ADA abuse of his person had become so unbearable that Plaintiff was forced to leave work early as shown below: [image]

**ANSWER:**     **Defendant denies the allegation contained in Paragraph 55 of the Complaint.**

56.     Plaintiff engaged in protected activity when he advised Defendant Village, through a supervisor, that agent would hear from his attorney regarding his complaint of ADA harassment.

**ANSWER:**     **Defendant denies the allegation contained in Paragraph 56 of the Complaint.**

57.     On belief, Defendant Piemonte failed to investigate Plaintiff's complaint.

**ANSWER:**     **Defendant denies that Plaintiff ever brought forward a complaint to investigate.**

58.     On January 30, 2020, Plaintiff timely filed a whistleblower complaint with the EEOC and cross-filed it with the IDHR against Defendants alleging disability discrimination and retaliation for having reported Defendant Serpico's conduct to his supervisor.

**ANSWER:**     **Defendant admits those complaints were filed but deny the allegations contained in the complaints.**

59.     Defendants have engaged in a policy, pattern, and practice of retaliating and condoning retaliation against employees or citizens who complain of protected class discrimination or report such misconduct.

**ANSWER:     Defendant denies the allegation contained in Paragraph 59 of the Complaint.**

60.     For example, *Borrego v. Village of Melrose Park*, 18-cv-03120 was an ADA lawsuit filed against the VMP by a disabled police officer alleging that Defendant Piemonte falsely claimed that the Plaintiff had refused a light duty position and had resigned when, in fact, he did not.

**ANSWER:     Defendant admits that such lawsuit was filed but denies the allegations contained in it.**

61.     *Trombetta v. Board of Education*, 2003 WL 2368509, a former janitor sued Defendant Serpico for political retaliation alleging that he was terminated and his five-year old niece was investigated in retaliation for exercising his First Amendment rights to manage and to support his cousin's opposing mayoral campaign against Defendant Serpico. The jury found in the former employee's favor and awarded him $1 million in punitive damages against Serpico.

**ANSWER:     Defendant admits the existence of the *Trombetta* lawsuit but denies Plaintiff's characterization and summary of it.**

62.     On belief, Defendants viewed each of Plaintiff's aforementioned protected activities as separate acts of defiance against Defendant Serpico.

**ANSWER:     Defendant denies the allegations contained in Paragraph 62 of the Complaint.**

63.     On belief, Defendants fabricated the basis for a so-called investigation against Principe as pretext to terminate him in retaliation for his protected activity.

**ANSWER:     Defendant denies the allegations contained in Paragraph 63 of the Complaint.**

64.     Plaintiff was placed on administrative leave pending the completion of this "internal investigation" for allegedly: "*being insubordinate, creating a hostile work environment, job abandonment, and various alleged violations of the Employee Handbook.*"

**ANSWER:     Defendant admits the allegations contained in Paragraph 62 of the Complaint and objects to the use of the term allegedly.**

65.     On belief, Defendants singled Plaintiff out because he complained about Defendant Serpico's verbal harassment on the basis of and motivated by Plaintiff's disability.

**ANSWER:     Defendant denies the allegations contained in Paragraph 65 of the Complaint.**

66.     Plaintiff was subsequently subjected to material adverse employment actions by the VMP that altered the terms and conditions of his employment, namely:

a)     accusing Plaintiff of vaguely worded infractions with no dates, no times, and no witnesses;

b)     changing the passwords and/or deactivating of Plaintiff's electronic files and accounts, including his cell phone and Email account;

c)     ordering Plaintiff to return any VMP property, not to contact any VMP employee during work hours, not to step foot onto any VMP-owned property without first contacting Police Director Pitassi, and not to do any of his work duties;

d)     Contacting local Melrose Park restaurants to obtain copies of their security footage to build a case against Plaintiff for "job abandonment;"

e)     Ordering certain rank and file employees not to speak to Plaintiff and threatening to punish any employee who violated this no-contact order;

f)     failing to follow the VMP's progressive discipline, anti-discrimination, or anti-retaliation policies; and

g)     conducting interviews of nearly two dozen VMP employees to build a case against Plaintiff. On further belief, the employees were only allowed to answer "yes" or "no" to any questions asked about Plaintiff.

**ANSWER:     Defendant denies the allegations contained in Paragraph 66 of the Complaint and its subparts.**

67.     On or about February 2, 2020, Plaintiff saw his treating physician who put him on medical leave based on Defendants' abusive conduct.

**ANSWER:     Defendant denies the allegations contained in Paragraph 67 of the Complaint.**

68.     Plaintiff provided Defendants with a copy of his doctor's note indicating that he was unable to return to work for the foreseeable future.

**ANSWER:     Defendant lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 68 of the Complaint.**

69.     Plaintiff also provided Defendants with a copy of his disability pension paperwork.

**ANSWER:     Defendant lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 69 of the Complaint.**

70.     Defendants ignored his doctor's orders and ordered him to appear for an interrogation at Del Galdo Law Group's office (VMP's attorney) in Berwyn regarding their internal investigation.

**ANSWER:     Defendant denies the allegation contained in Paragraph 70 of the Complaint.**

71.     On belief, Defendants, aware of Plaintiff's disability, deliberately scheduled this interrogation to occur in Berwyn knowing that he cannot leave the VMP.

**ANSWER:     Defendant denies the allegation contained in Paragraph 71 of the Complaint.**

72.     Defendants' attorneys ultimately agreed to hold the interrogation within the VMP but gave Plaintiff less than two days to prepare even though he was still on medical leave.

**ANSWER:     Defendant lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 72 of the Complaint.**

73.      Before the interrogation began, Plaintiff engaged in additional protected activity by raising concerns that the room that he would be interrogated in contained unauthorized

surveillance cameras with audio. To buttress his belief, Plaintiff presented Defendant VMP with a signed declaration that stated he was ordered by Defendant Serpico to purchase and to supervise the installation of state-of-the-art surveillance cameras with audio prior to the first hearing for former police officer, John Scatchell Jr., who has since been terminated.

**ANSWER:** **Defendant lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 73 of the Complaint.**

74. The interrogation was a sham. The VMP attempted to thwart Plaintiff's protected activity by:

a) Not sending Plaintiff's counsel a copy of his personnel file until 4:43 p.m. the day before his interrogation;

b) Defendant Piemonte placing several handwritten and undated documents into Plaintiff's personnel file purporting to be ongoing documentation of his alleged misconduct;

c) Not providing Plaintiff's counsel with a copy of the VMP's 2018 Employee Handbook until after she arrived at the Interrogation despite previous requests;

d) On belief, deliberately raising the temperature of the interrogation room to an unbearable temperature to maximize Plaintiff's anxiety;

e) Not sending Plaintiff the sick leave or Family Medical Leave Act paperwork despite Plaintiff's requests; and

f) Del Galdo Law Group declining Plaintiff's reasonable request that a demand be made on the Board of Trustees to appoint a disinterested third party to handle his investigation because Del Galdo Law Group, Defendant Serpico, and Defendant Piemonte all had impermissible conflicts of interest in the internal investigation.

**ANSWER:** **Defendant denies the investigation was a sham.**

75. On February 13, 2020, less than four hours after the interrogation had concluded, Defendant Piemonte notified Plaintiff, in writing, that the investigation was "complete" and terminated Plaintiff from his employment.

**ANSWER:** **Defendant admits the allegations contained in Paragraph 75 of the Complaint. Plaintiff was the last individual interviewed during the investigation related to his misconduct and it was evident at the conclusion of the investigation that his termination was warranted.**

76. On belief, Defendants violated the VMP Ordinance governing employee appointments and removals because:

a) Unless otherwise provided, employees of the village are hired and shall serve for an indefinite period." *See VMP Ordinance 2.48.030 - Term of office.*

b) Plaintiff was not terminated by a joint vote of Defendant Serpico and the Board of Trustees. See *VMP Ordinance 2.48.010 - Appointments and removals* ("power to hire or retain or remove from time to time such necessary employees as are provided for").

**ANSWER:** **Defendant denies that any ordinance was violated.**

77. Defendants' discriminated against Plaintiff's disability and then retaliated against him for his protected conduct by creating trumped up, ginned up charges in an effort to justify firing him which included a garden variety of violations pursuant to Handbook Rule 3.2: "failing to conduct himself in a professional manner, engaging in activities that conflict or interfere with Village operations, performing non-work related activities during working hours; interfering with the work of other employees; failing to treat other employees with courtesy and respect; using abusive language toward other employees; using profanity; smoking in prohibited areas; acting insubordinate; harassing employees or otherwise created a hostile work environment; and bringing and displaying his firearm into Village Hall on numerous occasions." (herein, the "Stated Reasons for Termination").

**ANSWER:** **Defendant denies that he discriminated or retaliated against Plaintiff in any manner.**

18

78.    Casting additional doubt onto the veracity of the Stated Reasons for Termination, Defendant Piemonte admitted to Plaintiff's fiancé that she did not want to fire Plaintiff, and that it was not her choice to do so despite being the one who signed off on his termination.

**ANSWER:    Defendant lacks sufficient knowledge to admit or deny the allegations contained in Paragraph 78 of the Complaint.**

79.    Defendants failed to adhere to the VMP's progressive discipline standard by not taking certain corrective, disciplinary steps as to Plaintiff before causing Plaintiff's termination.

**ANSWER:    Defendant denies the allegation contained in Paragraph 79 of the Complaint.**

80.    Defendants also failed to adhere to the VMP's anti-discrimination or anti-retaliation policies.

**ANSWER:    Defendant denies the allegation contained in Paragraph 80 of the Complaint.**

81.    Even if Plaintiff had committed the infractions listed as alleged in the Stated Reasons for Termination, Defendants had a long-standing policy that excused similar employees' behavior or much worse behavior.

**ANSWER:    Defendant denies the allegation contained in Paragraph 81 of the Complaint.**

82.    Even though the individual Defendants and others achieved their desired outcome—Principe's termination—they continued to retaliate against him.

**ANSWER:    Defendant denies there was a desired outcome and denies the remaining allegations contained in Paragraph 82 of the Complaint.**

83.    Defendants, among other acts, retaliated against Principe by:

a)    stating that Plaintiff would have been transferred to another location within the VMP, but "the final dagger in his back" was when he hired Gianna Scatchell as his attorney;

b)    denying Plaintiff's request for a post-termination or a name-clearing hearing;

    c)    deliberately attempting to interfere with Principe's IMRF disability application by notifying the IMRF administrator that he was terminated the morning after he was fired. On belief, the VMP had never notified the plan administrator of an employee separation that fast before; and

    d)    not providing Principe with the Notice of Rights and Unemployment Insurance Benefit Handbook as it is required to do by the Illinois Department of Employment Security within five (5) days of separation.

**ANSWER:**    **Defendant denies any retaliatory acts occurred.**

84.    The unlawful employment practices complained of were intentional, done with malice, and/or reckless indifference to Plaintiff's protected rights.

**ANSWER:**    **Defendant denies the allegation contained in Paragraph 84 of the Complaint.**

85.    As a result of the deliberate, unlawful, and malicious actions of Defendant as described herein, Plaintiff suffered and continues to suffer a loss of employment, benefits, and emotional harm.

**ANSWER:**    **Defendant denies the allegation contained in Paragraph 85 of the Complaint.**

**COUNT I: DISABILITY DISCRIMINATION UNDER THE ADA (42 U.S.C. § 12101 *et seq.*)(Plaintiff v. Village of Melrose Park, Illinois)**

86.    The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

**ANSWER:**    **This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

87.    Plaintiff is a member of a protected and suspect classification: a person with a disability.

**ANSWER:**    **This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

88.    As outlined in the preceding paragraphs, Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C.A. § 12111(8) because he can, with reasonable accommodation, perform the true essential functions of the job that he held and seeks to hold in the employ of the Defendant.

**ANSWER:**    **This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

89. During Plaintiff's employment, Defendants were on notice and at all times knew of Plaintiff's ADA-recognized disabilities.

**ANSWER:** **This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

90. Specifically, the VMP violated the ADA in at least the following ways: it failed to engage in the required interactive process; falsely accused him of job abandonment among other misconduct; penalized him more harshly than other employees without disabilities; degraded and humiliated him in front of his peers; subjected Plaintiff to a hostile work environment and an interrogation not imposed upon non-disabled persons that caused Plaintiff to lose his job and benefits; exacerbated Plaintiff's anxiety; and caused Plaintiff emotional distress.

**ANSWER:** **This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

91. At all times, Defendants developed sham allegations against Plaintiff that were a pretext to get rid of him because of his disabilities that Defendant Serpico had had enough of.

**ANSWER:** **This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

92. The discriminatory action of Defendant as set forth above, has caused and will continue to cause Plaintiff to suffer losses of earnings, from the date of his termination until the date on which Plaintiff is hired by Defendant, or finds substantially equivalent employment.

**ANSWER:** **This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

93. As a further proximate result of Defendant's unlawful and intentional discriminatory and retaliatory practices engaged in by the Defendants in violation of the ADA, Plaintiff sustained permanent and irreparable harm resulting in the termination of his employment, which caused him to sustain a loss of earnings, the value of certain benefits, loss of earning power, back pay, front pay, humiliation, mental anguish, loss of enjoyment of life, and emotional distress.

**ANSWER:** **This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

**COUNT II: RETALIATION TITLE VII & UNDER THE ADA 42 USC §§ 2000e-3(a);
12203 (Plaintiff v. Village of Melrose Park, Illinois)**

94. The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

**ANSWER:** **This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

95. Plaintiff engaged in activities protected by Title VII when: (a) Plaintiff complained to Defendant Piemonte in her official capacity alleging that the actions of Defendant Serpico created a hostile work environment; and discriminated against him based on his disability; (b) he stated that he was hiring an attorney; (c) filing EEOC and IHRA charges; (d) filing his pension disability paperwork; and (e) signing the declaration about the illegal wiretap.

**ANSWER:** **This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

96. Defendants took adverse actions against Plaintiff that "might well" dissuade a reasonable worker from making or supporting a charge of disability discrimination or retaliation including: (1) Defendants' initiating an internal investigation against him; (2) placing him on administrative leave; (3) diminishing his job duties, not allowing him on VMP property without prior notice to the police chief; (4) demanding that he return his VMP-issued property; (5) interviewing nearly two dozen people; and (6) subjecting Plaintiff to an interrogation while on medical leave.

**ANSWER:** **This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

97. The retaliatory nature of the termination is evidenced by the fact that Defendant fired a solid performing, 22-year veteran employee less than four (4) hours after his "interrogation" had concluded, two weeks after he complained about Defendant Serpico's disability discrimination, while he was still on medical leave, citing spurious reasons, and without following its anti-discrimination, anti-retaliation, or progressive discipline policies.

**ANSWER:** **This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

98.     At all times, Defendant Serpico and the Village of Melrose Park, by its agents, were aware of Plaintiff's protected activity and oppositional conduct based on the foregoing allegations.

**ANSWER:     This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

99.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered and continues to suffer economic losses including, loss of pay, emotional distress, and mental anguish due to his concerns about losing his job and not being able to support his family.

**ANSWER:     This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

100.     Defendant's retaliation against Plaintiff was a result of his protected activity, which was oppressive, malicious, and demonstrated total disregard for and reckless indifference to Plaintiff's civil rights. An award of punitive damages against each of the individual Defendants is warranted.

**ANSWER:     This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

**COUNT III: 42 U.S.C. § 1983 DEPRIVATION OF 14th AMENDMENT EQUAL PROTECTION BASED ON PROTECTED CLASSIFICATION (DISABILITY) (Plaintiff v. Defendant Serpico in his individual capacity)**

101.     The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

**ANSWER:     Defendant restates each answer to each paragraph of this Complaint as if fully restated here.**

102.     The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability, in violation of Title I of the ADA, 42 U.S.C. § 12112.

**ANSWER:     Defendant denies the allegations contained in Paragraph 102 of the Complaint.**

103.   Defendant Serpico deprived Plaintiff of his right to equal protection of the laws under the Fourteenth Amendment of the United States Constitution by subjecting him to a hostile work environment and investigatory interview not imposed upon non-disabled persons that caused Plaintiff to lose his job, benefits, exacerbated Plaintiff's anxiety and emotional distress.

**ANSWER:   Defendant denies the allegations contained in Paragraph 103 of the Complaint.**

104.    At all times, Defendant Serpico was acting under color of law in subjecting Plaintiff to the discriminatory acts complained of herein.

**ANSWER:   Defendant denies Plaintiff was subjected to the discriminatory acts complained of herein. Defendant admits that Serpico acts under the color of law in his scope as Mayor of VMP.**

105.    At all times, Defendant Serpico had no rational or other legal basis to subject Plaintiff to verbal abuse such as "*retard*," "*motherfucker*," "*bitch*," "*cunt*," and to otherwise subject him to verbally-degrading abuse based on Plaintiff's disability that Defendant Serpico at no time gave to non-disabled persons.

**ANSWER:   Defendant denies Serpico subjected Plaintiff to any verbal abuse.**

### COUNT IV: VIOLATION OF ILLINOIS HUMAN RIGHTS ACT (775 ILCS 5/1-101)
### (Plaintiff v. All Defendants)

106.    The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

**ANSWER:   This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

107.    Each Defendant's actions and inactions, as described herein, violated the Illinois Human Rights Act ("IHRA") by firing Plaintiff because of his disabilities and in retaliation for engaging in protected and oppositional activities as plead above.

**ANSWER:   This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

108.     As a direct and proximate cause of Defendants' unlawful actions, Plaintiff has suffered economic harm, loss of vocation, and immense emotional harm.

**ANSWER:     This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

### COUNT V: VIOLATION OF THE WHISTLEBLOWER ACT (740 ILCS § 174/1)
### (Plaintiff v. All Defendants)

109.     The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

**ANSWER:     This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

110.     Plaintiff complained to Defendant Piemonte, the EEOC, and the IDHR about Defendant Serpico's verbal harassment.

**ANSWER:     This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

111.     Defendants retaliated against Plaintiff in the manner described in the preceding paragraphs for disclosing Serpico's unlawful conduct and the unlawful audio and video surveillance to the Director of Human Resources, the EEOC, the Illinois Department of Human Rights, and two of Del Galdo Law Group's attorneys. *See 740 ILCS 174/15(b).*

**ANSWER:     This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

112.     When Defendants subjected Plaintiff to the various materially adverse employment actions, they were aware that he had reported Defendant Serpico's misconduct to both Defendant Piemonte, the EEOC, IDHR, and two of Del Galdo Law Group's attorneys. *See Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 918 (N.D. Ill. 2016) (denying motion for summary judgment where a reasonable jury could infer that the defendant officers retaliated against the Plaintiff for their whistleblowing on police corruption even though the defendants denied knowing that Plaintiff were whistleblowers).

**ANSWER:     This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

113.    After Plaintiff complained, he alleges that Defendants retaliated against him by the actions as described herein, including: subjecting him to an internal investigation, stripping him of his responsibilities and employee access, and ultimately terminating him all constitute materially adverse employment actions that altered the terms and conditions of his employment.

**ANSWER:    This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

114.    The VMP and its employees were prohibited from retaliating against Plaintiff for reporting clear mandates of public policy, such as enforcing state and federal civil rights statutes and laws and the policy of furthering investigation of a hostile work environment.

**ANSWER:    This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

115.    Each Defendant made, took part in, assisted in, and/or participated in the decision to retaliate against Plaintiff.

**ANSWER:    This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

116.    Plaintiff Principe had reasonable cause to believe that the information disclosed was a violation of state or federal law, rule or regulation.

**ANSWER:    This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

117.    Plaintiff Principe was subjected to retaliation in violation of rights guaranteed to him by the Illinois Whistleblower Act, 740 ILCS § 174/15, and he has suffered substantial losses as a result, including, but not limited to, lost wages and benefits, mental and emotional anguish and embarrassment and humiliation.

**ANSWER:    This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

**COUNT VI: VIOLATION OF MELROSE PARK MUNICIPAL CODE § 9.08.020**
**(Plaintiff v. Defendants Serpico and Piemonte)**

118.    The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

**ANSWER:    This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

119.     Under the Village of Melrose Park Mun. Code § 9.08.020: "[i]t is unlawful for any person to interfere with, hinder or resist any officer or employee of the village, while engaged in the duties of his or her office or employment."

**ANSWER:     This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

120.     Each of the Defendants interfered with the work of the Plaintiff by intentionally misrepresenting and/or fraudulently concealing material facts about their intentions to terminate Plaintiff.

**ANSWER:     This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

121.     Specifically, Defendant Piemonte made statements and representations that Plaintiff's "administrative leave should not be construed as a determination of wrongdoing against you nor should your leave be viewed as disciplinary in nature."

**ANSWER:     This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

122.     Yet, while Plaintiff was on administrative leave, Defendants interviewed nearly two dozen employees and sending subpoenas to local businesses looking for security camera surveillance against Plaintiff to trump up charges against him.

**ANSWER:     This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

123.     These misrepresentations and omissions were communicated and withheld by Defendants Serpico and Piemonte and other VMP employees in furtherance of their pre-determined scheme to terminate Principe.

**ANSWER:     This count is subject to a Motion to Dismiss. Therefore, no answer is required.**

### COUNT VII: INDEMNIFICATION
### (Plaintiff v. Village of Melrose Park, Illinois)

124.     The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

**ANSWER:     This count is not directed at this Defendant. Therefore, no answer is required.**

125.     Defendant VMP is obligated to assume financial responsibility for the actions committed by its officials or employees, including Defendants Serpico and Piemonte.

**ANSWER:     This count is not directed at this Defendant. Therefore, no answer is required.**

126.     Plaintiff, James Principe, demands a trial by jury on all issues so triable.

**ANSWER:     This count is not directed at this Defendant. Therefore, no answer is required.**

WHEREFORE, Defendant, RONALD SERPICO, hereby seeks dismissal of all Counts of Plaintiff's Complaint, and for such other relief as this Court deems just and proper.

### AFFIRMATIVE DEFENSES

Defendant, RONALD SERPICO, by and through his attorney, K. Austin Zimmer of DEL GALDO LAW GROUP, LLC, for his Affirmative Defenses to Plaintiff's Complaint, states:

### FIRST AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS

1.     Plaintiff filed his complaint with the EEOC and IDHR on January 30, 2020.

2.     Plaintiff filed this action, **Doc. # 1**, on March 2, 2020.

3.     Counts I and II of the Complaint were filed pursuant to Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990, and allege employment discrimination based on disability and retaliation.

4.     Count IV of the Complaint is claim under the Illinois Human Rights Act.

*5.*     In Illinois, a plaintiff must file a charge for alleged Title VII and ADA violations within 300 days of an alleged unlawful employment practice. *See Fiona Feng Chen v. Nw. Univ.*, 175 F. App'x 24, 26 (7th Cir. 2005).

6.     The 300 day filing requirement also applies to claims under the IHRA. 775 ILCS 5/7A-102(A)(1).

7.     "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

8.     Accordingly, any discrete acts pertaining to alleged violations of Title VII, ADA, or IHRA that occurred prior to April 5, 2019 are not actionable.

## SECOND AFFIRMATIVE DEFENSE – HUMAN RIGHTS ACT PREEMPTION

1.     Plaintiff has asserted claims under the Illinois Human Rights Act and the Illinois Whistleblower Act.

2.     To the extent that alleged violations of the Illinois Whistleblower Act are linked to the alleged violations of the Illinois Human Rights Act, such claims under the Illinois Whistleblower Act are preempted by the Illinois Human Rights Act and should be dismissed. *See Bell v. LaSalle Bank N.A./ABN AMRO N.A., Inc.*, 2005 WL 43178 (N.D. Ill. 2005).

## THIRD AFFIRMATIVE DEFENSE – ILLINOIS TORT IMMUNITY ACT

1.     At all times relevant hereto, there was in effect in Illinois, a statute commonly known as the Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/1-101, *et seq.*

2.     At all relevant times, Defendant was a public employee, as contemplated by the Tort Immunity Act. 745 ILCS 10/1-207.

3.     Under section 2-201 of the Tort Immunity Act, Defendant is not liable because, to the extent Plaintiff seeks recovery under state law for any employment decision made by Defendants, a public employee is not liable for discretionary decisions. 745 ILCS 10/2-201.

4.     Under section 2-202 of the Tort Immunity Act, Defendant is not liable because a public employee is not liable for acts or omissions in the execution or enforcement of any law,

unless such acts or omissions constitute willful or wanton conduct. It cannot be shown that Defendant engaged in any acts or omissions at a degree of willful and wanton conduct; therefore, Plaintiff's claims are barred, in whole or in part, by the Tort Immunity Act. 745 ILCS 10/2-202.

5. Under the Tort Immunity Act, Defendant is not liable because a public employee acting within the scope of his or her employment is not liable for any injury caused by the act or omission of another person. 745 ILCS 10/2-204. Accordingly, Plaintiff's claims against Defendant are barred, in whole or in part, by the Tort Immunity Act.

6. Under section 2-208 of the Tort Immunity Act, Defendant is not liable because a public employee is not liable for an injury caused by the institution or prosecution of any judicial or administrative proceeding carried out within the scope of his employment, unless the public employee acts maliciously and without probable cause. It cannot be shown that Defendant acted maliciously and without probable cause; therefore, Plaintiff's claims are barred, in whole or in part, by the Tort Immunity Act. 745 ILCS 10/2-208.

## FOURTH AFFIRMATIVE DEFENSE – FAILURE TO MITIGATE

1. To the extent that Plaintiff is entitled to any damages, which Defendant expressly denies, Plaintiff failed to use reasonable efforts to mitigate those damages, and Plaintiff's damages, if proven, should be eliminated or reduced accordingly.

## FIFTH AFFIRMATIVE DEFENSE – PUNITIVE DAMAGES

1. Employment decisions made by Defendants within the scope of their employment, including the decision to terminate Plaintiff, are discretionary employment actions that are considered executive, legislative, or quasi-judicial; therefore, Defendants are not liable to pay punitive damages, as set forth by statute and case law. *See* 745 ILCS 10/2-102 and 745 10/2-213.

Respectfully submitted,
**RONALD SERPICO**
By: */s/ K. Austin Zimmer*
    K./ Austin Zimmer
    One of his attorneys

K. Austin Zimmer (6276227)
Joseph A. Giambrone (6309071)
Del Galdo Law Group, LLC
1441 South Harlem Avenue
Berwyn, Illinois 60402
P: (708) 222-7000/F: (708) 222-7001
zimmer@dlglawgroup.com
giambrone@dlglawgroup.com