## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JAMES PRINCIPE,

      Plaintiff,

    v.

VILLAGE OF MELROSE PARK, et al.,

      Defendants.

No. 20 CV 1545

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff James Principe, who has a disability, worked for the Village of Melrose Park for 22 years. The Mayor, defendant Ronald Serpico, repeatedly berated Principe about his condition and reduced his work responsibilities. And the Human Resources Director, defendant Christine Piemonte, allegedly fabricated a story about Principe bringing a gun to work. After Principe complained, the defendants placed him on administrative leave, and then, after an investigation, fired him for insubordination and other things. Principe sues the Village, Serpico, and Piemonte for discriminating against him because of his disability and retaliating against him for speaking out. Defendants move for partial dismissal under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the motion is granted in part, denied in part.

## I.    Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must

contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, I construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018).

## II.    Background

James Principe worked for the Village of Melrose Park for 22 years, most recently as the Director of Information Technology. [1] ¶¶ 9, 14.[1] Principe took daily medication to treat post-traumatic stress disorder, anxiety, and panic disorder with agoraphobia. [1] ¶ 15. As a symptom of his condition, he could not leave the city limits of Melrose Park. [1] ¶ 16.

In June 2018, Mayor Ronald Serpico began berating Principe about his condition. [1] ¶¶ 19, 22. On another occasion, Principe put up curtains in his office, which was protected by an access code. [1] ¶¶ 23–26. Serpico ordered Principe's office door to be removed at the hinges to take down the curtains. [1] ¶¶ 23–26. Principe's doctor placed him on a two-month medical leave because of the stress and anxiety he felt working at the Village. [1] ¶ 28.

About a year and a half later, Serpico began calling Principe offensive names, and asked Principe, "Where are you going to get a job making as much money as you

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

do with your 'condition?'" [1] ¶ 31. Serpico reassigned some of Principe's duties to Christine Piemonte, the Director of Human Resources. [1] ¶¶ 12, 33.

Around the same time, Piemonte threatened to call the police on Principe for pointing a gun at her at Village Hall. [1] ¶ 34. Principe denied that he had ever brought a gun to work. [1] ¶ 35. Piemonte also made negative comments about Principe to their other coworkers. [1] ¶ 36. Principe met with Serpico to report Piemonte and to discuss his decreasing work responsibilities. [1] ¶ 38. During that meeting, Serpico told Principe that the Village made "a lot of accommodations" for Principe's "phobias, your anxiety, your mental illness, or whatever you want to call it." [1] ¶ 39. Serpico asked Principe if he thought "all these accommodations would be made anywhere else?" and added, "You would never make the kind of money elsewhere that you make here with your illness." [1] ¶ 39. Serpico also said that he was expecting Principe's mother to pass away, and anticipated that Principe would "react very badly" to her death because Principe was "dependent on his mother." [1] ¶¶ 40–41.

On another occasion, Serpico called Principe and another coworker to his office and referred to Principe's disability in front of his coworker derogatorily. [1] ¶¶ 42–44. Serpico also made sexual comments about Principe's fiancé's mother. [1] ¶ 48. On another day, Principe overheard Serpico saying that he had "had it" with Principe. [1] ¶ 50.

On January 30, 2020, Serpico shouted at Principe in front of his coworkers, commenting on his agoraphobia and warning that Principe "better keep his mouth

shut." [1] ¶¶ 51–52. Later that day, Principe reported to one of his supervisors that Serpico's conduct was so bad that Principe had to leave work early, and told the supervisor that the Village would be hearing from his attorney. [1] ¶¶ 55–56. That same day, Principe filed a report with the EEOC and the Illinois Department of Human Rights alleging disability discrimination and retaliation. [1] ¶¶ 2, 8, 58. A few days later, Principe's doctor put him on medical leave. [1] ¶ 67.

Serpico and Piemonte thereafter initiated an internal investigation into Principe for insubordination, creating a hostile work environment, job abandonment, and violating the employee handbook. [1] ¶¶ 63–64. They placed him on administrative leave pending the results of the investigation, which included changing his passwords, ordering him to return Village property, and barring him from contacting any Village employee. [1] ¶¶ 64–66. Other Village employees who were interviewed as part of the investigation were told not to have contact with Principe. [1] ¶ 66.

Defendants summoned Principe for an interview, even though he was on medical leave, and scheduled the interview in Berwyn despite knowing that Principe could not leave Melrose Park. [1] ¶¶ 70–72. (They later changed the location to Melrose Park. [1] ¶ 72.) Defendants withheld information from Principe and his attorney, such as his personnel file and the employee handbook, until right before the interview. [1] ¶ 74. They also raised the temperature in the interrogation room to exacerbate Principe's anxiety, and declined his request to have a third party handle the investigation. [1] ¶ 74. Four hours after the interview ended, Principe received

notice that the internal investigation was complete and that he had been terminated. [1] ¶ 75. Defendants denied Principe's request for a post-termination hearing, and never provided Principe with information about unemployment insurance, as they were required to do. [1] ¶ 83.

## III.  Analysis

Principe brings claims under the ADA and Title VII against the Village (Counts I and II) and alleges an Equal Protection violation against Serpico under 42 U.S.C. § 1983 (Count III). He alleges that all three defendants violated the Illinois Human Rights Act and the Illinois Whistleblower Act (Counts IV and V), and that Serpico and Piemonte violated Village Municipal Code § 9.08.020 (Count VI). Finally, he brings a claim for indemnification against the Village (Count VII). Defendants filed partial answers; the Village answered Counts V and VII, [14], and Serpico and Piemonte answered Count III. [15].

Defendants move together for partial dismissal under Rule 12(b)(6). [17]. They argue that Principe has not exhausted his administrative remedies, so the claims brought under the ADA, Title VII, and the IHRA (Counts I, II, and IV) must be dismissed. They also argue that Serpico and Piemonte are improperly named as individual defendants in the ADA, Title VII, IHRA, and Whistleblower Act claims; Principe's complaint labeled the ADA and Title VII claims as being only against the Village, but asked for damages from all defendants. Principe concedes that he cannot bring individual claims against Serpico and Piemonte under the ADA, Title VII, or IHRA, and agrees to dismiss those claims as to the individual defendants only. [20]

at 8. Finally, defendants move to dismiss Count VI, because there is no private right of action under the Village Municipal Code, and Principe voluntarily withdraws Count VI, but asks to replead it. [20] at 11.[2]

Three issues remain: whether Principe has exhausted his administrative remedies (Counts I, II, and IV); whether the Illinois Whistleblower Act allows claims against Serpico and Piemonte as individuals (Count V); and whether Principe may replead the violation of the Village Municipal Code (Count VI).

## A.  Failure to Exhaust Administrative Remedies

### 1.  *Title VII and ADA Claims*

Before a plaintiff can bring a Title VII or ADA claim, he must exhaust his administrative remedies by filing charges with the EEOC and receiving a right-to-sue letter. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019); *Arrigo v. Link*, 836 F.3d 787, 793 (7th Cir. 2016); *Stepney v. Naperville School Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). Filing a charge with the EEOC is "not a jurisdictional prerequisite to suit," but rather an "affirmative defense akin to administrative exhaustion." *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 921 (7th Cir. 2007); *see also Fort Bend Cty., Tx. v. Davis*, 139 S. Ct. 1843, 1850–51 (2019); *Worth v. Tyer*, 276 F.3d 249, 259 (7th Cir. 2001). So a court may excuse its absence in certain circumstances: for example, when a plaintiff has not received a right-to-sue letter due to "EEOC error." *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 129 (7th Cir. 1989). If a

---

[2] Defendants do not move to dismiss the Equal Protection claim (Count III), or the indemnification claim (Count VII), or the Whistleblower Act claim (Count V) as to the Village.

plaintiff files suit without a letter, but receives one before the complaint is dismissed, receipt of the letter "effectively cure[s] the deficiency in the original complaint." *Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991); *see also Worth*, 276 F.3d at 259.

Principe alleges he filed a charge with the EEOC and Illinois Department of Human Rights on January 30, 2020. [1] ¶ 58. When he filed the complaint at issue here, on March 2, 2020, he had not yet received a right-to-sue letter. [1] ¶ 8. As of May 26, 2020, when defendants moved to dismiss, Principe had not received the letter yet. When Principe responded to the motion on June 19, 2020, he still had not received the letter, but argued that dismissal was not warranted because EEOC error prevented him from receiving it. [20] at 7–8. On June 22, 2020, the EEOC issued the right-to-sue letter. [21-1] at 1. Principe entered that letter on the docket a week later, on June 29, along with other exhibits that he referenced in his response to the motion to dismiss. [21]. Defendants acknowledge that Principe has received a right-to-sue letter, [22] at 3, but still urge dismissal on the grounds that Principe is improperly amending his complaint.

Principe should have waited to receive the right-to-sue letter before filing suit. He filed his complaint barely a month after filing his EEOC charge. And he received the right-to-sue letter only a few months after he filed the amended charge. This is not a case where Principe's failure to receive a right-to-sue letter sooner is due to EEOC error, as he claims. *Cf. Grasty v. Cambridge Integrated Servs. Grp., Inc.*, 2014 WL 5543933, at *4 (N.D. Ill. Nov. 3, 2014) (EEOC mistakenly closed plaintiff's case);

*Hill v. Vill. of Franklin Park*, 2008 WL 686256, at *5 (N.D. Ill. Mar. 11, 2008) (EEOC's failure to issue a right-to-sue letter was beyond plaintiff's control). But dismissal is not warranted. When a plaintiff receives a right-to-sue letter after he files the complaint, but before the complaint is dismissed, receipt of the letter "effectively cure[s] the deficiency in the original complaint." *Perkins*, 939 F.2d at 471. Since Principe received a right-to-sue letter before dismissal, he cured the deficiency in his complaint.

Defendants' motion to dismiss Counts I and II is denied.

### 2. IHRA Claim

Principe's IHRA claim also requires exhaustion. Any party seeking to pursue a civil-rights claim in Illinois "must first exhaust administrative remedies available under the Act." *Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 640 (7th Cir. 2004); *see* 775 ILCS § 5/8-111(D) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."). When a plaintiff fails to comply with the IHRA's exhaustion requirements, dismissal is warranted. *Garcia*, 360 F.3d at 640; *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 459 (7th Cir. 1994).

The IHRA sets out "comprehensive administrative procedures governing the disposition of alleged civil rights violations," and a plaintiff must comply with those procedures before he may sue. *Blunt v. Stroud*, 232 Ill.2d 302, 310 (2009). When charges are pending before both the EEOC and IDHR, and the EEOC considers the charge first, the complainant must notify the IDHR when he receives the right-to-sue

letter from the EEOC. The IDHR will adopt the EEOC's determination as a dismissal for lack of substantial evidence unless the complainant asks the IDHR to review the EEOC determination within a certain time. 775 ILCS § 5/7A-102(A-1)(3)(a). Once the IDHR adopts the EEOC's determination, the plaintiff may sue in court. *Id.*[3]

Principe does not allege that he followed these procedures. He alleges that he filed charges separately with the IDHR and the EEOC, [1] ¶¶ 2, 58, but does not allege that he notified the IDHR of the EEOC's determination, or that he has received any notice from the IDHR authorizing him to file a lawsuit. Since Principe has not exhausted his administrative remedies as set out in the IHRA, his IHRA claim must be dismissed.[4]

That Principe has since received an EEOC right-to-sue letter does not save the IHRA claim. The IHRA and the EEOC have a workshare agreement in which a charge filed with one is automatically cross-filed with the other. *Carlson v. Christian Bros.*

[3] Defendants incorrectly assert that Principe needs a final order from the Illinois Human Rights Commission before he may bring a suit in court. [17] at 5–6. The Department of Human Rights and the Human Rights Commission are separate entities. When a plaintiff files a charge with the IDHR, the department considers whether substantial evidence supports the charges; if not, it must issue a report within 365 days giving the complainant notice of his right to *either* seek review before the Illinois Human Rights Commission or file a civil lawsuit. 775 ILCS §§ 5/7A-102(C)(1), (D)(3), (G)(1)–(2). Under an earlier version of the IHRA, judicial review was only available after the commission issued a final order. In 2008, the legislature amended the Act to allow a complainant to either file a lawsuit in court or seek review from the commission following IDHR's review. Ill. Public Act 95-243.

[4] Administrative exhaustion is an affirmative defense that ordinarily need not be overcome at the pleading stage, unless the allegations in the complaint "unambiguously establish all the elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016); *see Salas*, 493 F.3d at 921. Here, the complaint establishes the relevant facts, and Principe does not object to considering the defense on a 12(b)(6) motion, so resolution is appropriate.

*Servs.*, 840 F.3d 466, 467 (7th Cir. 2016) ("IDHR has a worksharing agreement with EEOC, whereby a charge filed with IDHR is automatically cross-filed with EEOC."); *see also* 775 ILCS § 5/7A-102(A-1)(1) ("If a charge is filed with the … EEOC … the charge shall be deemed filed with the Department on the date filed with the EEOC."). But that workshare agreement does not eliminate or supersede a plaintiff's obligations to exhaust administrative remedies as set out in the IHRA. Principe points to no authority suggesting that he does not need to exhaust remedies, and courts routinely reject the argument that the workshare agreement allows a plaintiff bringing an IHRA claim to circumvent the Act's requirements. *See, e.g.*, *Perez v. Cook Cty. Sheriff's Office*, 2020 WL 777288, at *3 (N.D. Ill. Feb. 18, 2020) (EEOC right-to-sue letter "cannot be used as a substitute" for exhaustion "regardless of the workshare agreement" (citation omitted)); *Swidnicki v. Brunswick Corp.*, 23 F.Supp.3d 921, 929–30 (N.D. Ill. 2014) (same); *Anderson v. Ctrs. for New Horizons, Inc.*, 891 F.Supp.2d 956, 959–60 (N.D. Ill. 2012) (same); *see also Flesor v. Unisource Worldwide, Inc.*, 2014 IL App (1st) 132559-U, ¶¶ 36–38 (receiving EEOC right-to-sue letter was "not a viable administrative remedy" to resolve IHRA claims).

The proper resolution when a plaintiff fails to exhaust administrative remedies is dismissal without prejudice. *Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009). Count IV is dismissed without prejudice.

### B. Individual Liability in the Whistleblower Act

The Illinois Whistleblower Act bars employers from retaliating against employees who make certain disclosures, among other things. *See generally* 740 ILCS § 174; *Roberts v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 2019 IL 123594, ¶ 40. An employer is defined as an individual or entity, including a local government, that "has one or more employees," and "any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees." 740 ILCS § 174/5. The state legislature added the last clause in 2008 when it amended the statute. Ill. Public Act 95-128 § 5.

Defendants insist that Serpico and Piemonte cannot be liable under the Whistleblower Act because they are individuals, so they are not "employers" as defined by the statute. But the text of the statute says otherwise. The meaning of the statute is unambiguous: any person acting within the scope of his or her express or implied authority on behalf of the entity is considered an employer. Serpico was the Mayor of Melrose Park, and Piemonte was the Director of Human Resources. Taking Principe's factual allegations as true, all of the alleged insults and indignities he suffered occurred at work, in the scope of his duties, while Principe and Serpico were acting in their designated official roles as authority figures. Principe has adequately pleaded that Serpico and Piemonte were acting within the scope of their authority on behalf of the Village when they allegedly retaliated against him for reporting their conduct. *See, e.g.*, *Caulfield v. Packer Eng'g, Inc.*, 2019 IL App (2d) 170740-U, ¶ 71

11

(applying Act to individual who "was acting within the scope" of his "authority and control").[5]

The Whistleblower Act does not mirror federal employment discrimination statutes like Title VII and the ADA, as defendants argue on reply.[6] Title VII and the ADA define "employer" as a person "engaged in an industry affecting commerce who has fifteen or more employees," and "any agent of such a person." 42 U.S.C. § 2000e(b) (Title VII); *see also* 42 U.S.C. § 12111(5)(a) (ADA). That Congress limited Title VII and ADA liability to entities with fifteen or more workers reflected "a balance between the goal of stamping out all discrimination and the goal of protecting small entities" from having to litigate discrimination claims. *U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995) (ADA); *see also Williams v. Banning*, 72 F.3d 552, 553–54 (7th Cir. 1995) (Title VII). Thus, if Congress decided to protect small businesses from liability, "it is inconceivable that Congress intended to allow civil liability to run against individual employees." *AIC*, 55 F.3d at 1281 (quoting *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993)). So the inclusion of agents in Title VII and the ADA did not create individual liability; rather,

---

[5] Courts in this district are divided on whether an individual may be held liable under the Whistleblower Act. *See Wheeler v. Piazza*, 364 F.Supp.3d 870, 884 (N.D. Ill. 2019) (discussing split among district courts). Courts that find the Act does not apply to individuals analogize it to federal discrimination statutes that do not allow individual liability, the argument that defendants advance. *See Parker v. Ill. Human Rights Comm'n*, 2013 WL 5799125, at *9 (N.D. Ill. Oct. 25, 2013). Courts that do apply the Act to individuals rely on the text of the statute. *See Wheeler*, 364 F.Supp.3d at 884 (collecting cases); *see also Bello v. Vill. of Skokie*, 2014 WL 4344391, at *9 (N.D. Ill. Sept. 2, 2014) ("[T]he IWA is clear on its face.").

[6] Since defendants only bring this argument in reply, it is technically waived. *Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009). I address it in the interest of completeness.

12

Congress included the phrase "to ensure that courts would impose *respondeat superior* liability upon employers for the acts of their agents." *AIC*, 55 F.3d at 1281; *see Banning*, 72 F.3d at 553.

That analysis does not apply to the Whistleblower Act. The Act does not contain a limitation on the number of employees an entity must have to qualify as an employer, so the same concern about shielding small businesses, and by extension, individuals, does not apply. Moreover, the legislature amended the definition of employer in the Act in 2008, well after interpretation of the federal discrimination statutes was settled, and did not incorporate those definitions or add in an employee-limitation number.[7] In any event, "Plain text trumps purpose." *INTL FCStone Fin. Inc. v. Jacobson*, 950 F.3d 491, 499 (7th Cir. 2020). Even if defendants could offer some support for the argument that the drafters of the Whistleblower Act meant it to mirror the federal statutes with regard to individual liability, there is no need to consult the legislative purpose behind a statute when the language is clear. *Id.*

Defendants' reliance on *Cunliffe v. Wright*, 51 F.Supp.3d 721, 740 (N.D. Ill. 2014) and *Banks v. Chi. Bd. of Educ.*, 2013 WL 951111, at *12 (N.D. Ill. Mar. 12, 2013) is misplaced. While those cases hold that there is no individual liability under the Whistleblower Act, they both rely on 2007 cases for that proposition, which do not reflect the post-2008 amendments.

---

[7] By way of contrast, the definition of employer in the Illinois Human Rights Act more closely resembles the definition in the federal statutes. For example, it places a fifteen-person threshold on an entity to be considered an employer. 775 ILCS § 5/2-101(B). And like the federal statutes, the IHRA does not permit individual liability. *See Watkins v. Office of State Appellate Def.*, 2012 IL App (1st) 111756, ¶ 38; *Anderson v. Modern Metal Prod.*, 305 Ill.App.3d 91, 102 (1999).

Defendants' motion to dismiss Count IV is denied.

## C. Municipal Violation

Principe withdraws Count VI, which alleges that Serpico and Piemonte violated § 9.08.020 of the Village Municipal Code. That provision provides: "It is unlawful for any person to interfere with, hinder or resist any officer or employee of the village, while engaged in the duties of his or her office or employment." Principe asks for leave to replead, and Serpico and Piemonte oppose that request.

Principe does not allege or argue that the Village code creates an express right of action. To determine whether a statute implies a right of action, Illinois courts look to four factors: whether the plaintiff is a member of the class for whose benefit the statute was enacted; whether a private right of action is consistent with the underlying purpose of the statute; whether the plaintiff's injury is one the statute was designed to prevent; and whether it is necessary to provide an adequate remedy for violations of the statute. *Henderson Square Condo. Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 74, *opinion modified on denial of reh'g* (Jan. 28, 2016); *Cowper v. Nyberg*, 2015 IL 117811, ¶ 20. Principe does not grapple with this test. And as defendants point out, the Village code already provides a remedy—a fine—for violations of the code in § 1.16.010.

Unless amendment is futile, leave to amend should be freely given after dismissal of an initial complaint. *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018). Although I am skeptical that a private right of action exists in the Village code, it's not obvious that amendment is futile at this

point. If Principe repleads Count VI, he should be prepared to cite authority to support his assertion that § 9.08.020 implies a private right of action, and plaintiff's counsel should consider the Rule 11 implications of signing such a complaint.

Count VI is dismissed without prejudice.

## IV. Conclusion

Defendants' motion is granted in part, denied in part. Counts I and II are dismissed as to the individual defendants. Count IV is dismissed without prejudice for failure to exhaust administrative remedies. Count VI is dismissed without prejudice. If Principe does not replead Count VI by September 8, 2020, that dismissal will convert to one with prejudice. Defendants shall answer the remaining claims by September 8, 2020. The parties shall file a joint status report with a proposed discovery schedule by September 8, 2020.

ENTER:

Manish S. Shah
United States District Judge

Date:  August 18, 2020

15