**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JAMES PRINCIPE,

        Plaintiff,

    v.

VILLAGE OF MELROSE PARK, RONALD
SERPICO, and CHRISTINE PIEMONTE,

      Defendants.

No. 20 CV 1545

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Principe worked for the Village of Melrose Park for nearly twenty-three years. He suffered from anxiety and panic disorders. Principe alleges that defendant Ronald Serpico, the mayor and Principe's supervisor, referred to Principe using a slur for disability, and regularly swore at him. Principe complained; defendants placed him on administrative leave and fired him. Principe sues the Village for disability discrimination under the Americans with Disabilities Act and retaliation under the ADA and Title VII. He brings a claim against all defendants for state-law retaliation and sues Serpico for violation of his constitutional rights under 42 U.S.C. § 1983. Defendants move for summary judgment under Federal Rule of Civil Procedure 56. For the reasons discussed below, the motion is granted in part, denied in part.

## I.    Legal Standard

A party moving for summary judgment must show that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). I construe all facts and draw all reasonable inferences in favor of Principe, the nonmoving party. *See Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 377–78 (7th Cir. 2020). Defendants bear the burden of establishing that the summary judgment standard is met, but Principe must put forward enough evidence to establish every element of his claims and show that he can carry his burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II.    Background

James Principe worked for the Village of Melrose Park, most recently as Director of Management Information Services. [71] ¶ 2.[1] He suffered from agoraphobia, generalized anxiety, and panic disorders. *Id.* ¶ 13; [79] ¶ 2. Principe had anxiety attacks, difficulty with fine motor skills, and hadn't left the Village in

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from Principe's response to defendants' joint Local Rule 56.1 statement, [71], and defendants' response to Principe's statement of additional facts, [79], where both the asserted fact and the opposing party's response are set forth in one document. Any fact not properly controverted is admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). I disregard legal arguments in the statements of facts, *see Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006); N.D. Ill. Local R. 56.1(d)(4), and ignore additional facts included in response that do not controvert the asserted fact. N.D. Ill. Local R. 56.1(e)(2). Principe relies heavily on compound facts—combining multiple allegations—in violation of Local Rule 56.1(d)(1). *See, e.g.*, [79] ¶¶ 5, 21, 28. Plaintiff also fails to properly controvert many of defendants' statements of facts, which are admitted. *See* [71] ¶¶ 19, 22–24, 28–29, 32, 37–38, 41, 44, 50. The parties dispute many facts. When relevant to the analysis of summary judgment, I include some disputed facts in the light favorable to Principe.

decades. *See* [71] ¶ 13; [79] ¶ 2; [55] at 17. His disability was well known because Principe posted on a social media account and spoke with others about it. [71] ¶ 13.²

The parties dispute whether Principe was doing a good job for the Village. *See* [79] ¶ 5. Longtime mayor Ronald Serpico, Principe's supervisor, [71] ¶¶ 3, 11; [79] ¶ 3, told Principe a few months before his employment ended to "keep up the good work." [79] ¶ 5. Serpico also said that he had limited interactions with Principe and wasn't able to tell whether Principe was doing a good job. *See* [79] ¶ 5. In his more than twenty years at the Village, Principe said that he received only one verbal warning from his supervisors. *Id.* But Village directors said that Principe was insubordinate and acted inappropriately, *see* [79] ¶¶ 5, 28, and Christine Piemonte, the HR Director, [71] ¶ 4; [79] ¶ 3, said that she spoke with Principe about problems with his behavior. *See* [79] ¶ 5; [70] at 135–140. Principe's personnel file included three handwritten notes from Piemonte, two of which were dated 2018 and 2020, noting Principe's unprofessional behavior. *See* [79] ¶ 28; [70] at 135–140. Piemonte also said the Village didn't conduct performance evaluations, and that department heads monitored employee performance. *See* [79] ¶ 12.

Principe played video games while in the office and parked his car in a no-parking zone, but the parties disagree about whether he was allowed to do so. [71]

---

² The parties dispute whether Principe requested accommodations, *see* [71] ¶ 14, but that dispute isn't material. The amended complaint alleges that defendants failed to engage in the interactive process under the ADA, *see* [26] ¶ 91, but neither party addressed that theory of discrimination in their briefs. *See* [50]; [64].

¶¶ 27, 30; [79] ¶¶ 28, 31, 33.[3] Principe smoked in Village buildings in violation of an employee handbook rule, but he identified two other Village employees who also smoked in their offices and weren't disciplined. *See* [71] ¶ 29; [79] ¶ 35.[4] Principe said that, following instructions from one of his supervisors, he brought his gun onto Village property on three occasions. *See* [71] ¶ 28; [55] at 223–224.

Piemonte said that Principe harassed and fought with another employee, and that Piemonte had to change the seating arrangement in the office to separate Principe from his colleague. [71] ¶ 31.[5] Village directors said that Principe used foul and inappropriate language, [71] ¶ 32, but other employees testified that swearing was common at work. [79] ¶ 30; *see* [71] ¶¶ 22, 40.[6]

Several of the parties' disputes center on Principe's relationship with Piemonte. Principe called Piemonte names and joked about her not doing her job, and Piemonte spoke to him to about those issues. [71] ¶ 33; [79] ¶ 5. After Piemonte

---

[3] It's reasonable to infer from Serpico's alleged statement that the mayor gave Principe permission to play games. *See* [55] at 200. A second supervisor's statement that Principe could play games is not an assertion offered for the truth of the matter, but is a verbal act—a grant of permission. *See Schindler v. Seiler*, 474 F.3d 1008, 1010–11 (7th Cir. 2007) (quoting the Advisory Committee Notes to Fed. R. Evid. 801(c)); *see also United States v. Moreno*, 233 F.3d 937, 940 (7th Cir. 2000) (a verbal act isn't hearsay).

[4] As a colleague of the employees in question and with a title of Director, it's reasonable to infer that Principe had personal knowledge of whether his colleagues had been disciplined for smoking. *See* Fed. R. Evid. 602.

[5] Piemonte separated the two as a result of Principe's treatment of his colleague, and told Principe to remain professional. *See* [64-3] at 122–23. I disregard Principe's additional facts that do not controvert the fact asserted. *See* [71] ¶ 31.

[6] Piemonte said that one of the allegations of Principe's unprofessional behavior and Principe's use of profane language weren't investigated until January 2020, but didn't say that the Village failed to investigate all other allegations until that time. *See* [79] ¶¶ 29–30; [64-3] at 205.

received a raise, Principe became upset. *Id*. ¶ 37. He talked about Piemonte's raise with other employees, causing disruption, but Principe said that discussion of salaries was commonplace in the office. *See id*.

Principe had authority to sign checks on behalf of the Village. [71] ¶ 34. In January 2020, a Village ordinance was circulated that would have made Piemonte an additional signatory should Principe be unavailable. *Id*. Principe sent e-mails to Village vendors telling them (incorrectly) that Piemonte would now be their point of contact at the Village. *Id*. ¶ 35. While Principe wasn't forbidden from contacting the vendors, the emails caused problems and Piemonte corrected the error. *Id*. ¶¶ 35–36.

The Village maintained an employment handbook that all employees were required to follow. *See* [79] ¶¶ 7–10; [70] at 2. The handbook required employees to treat one another with respect and to avoid interfering with the work of others, verbal confrontations, abusive language, and profanity. [70] ¶ 9. The handbook outlined a progressive discipline model, *see id*. ¶ 7, but stated that the Village "reserves the right to make decisions based on an individual case-by-case basis," and that the Village could "elect to discipline or terminate an employee without prior warning or procedure." *See* 79 ¶ 7; [70] at 18–19.

According to the Village handbook, employees were supposed to complain about harassment or discrimination "directly to your immediate supervisor or department manager" or to the Director of Human Resources, and complaints would be promptly investigated. [79] ¶ 10. Piemonte said that she would handle an informal complaint brought against a director, but that more serious complaints or those

5

brought against the mayor could be referred to an attorney. *See id.* ¶¶ 10–11. Complaints against Piemonte would be directed to Serpico. *Id.* ¶ 11.

### A. Alleged Discrimination, Harassment, and the EEOC Charge

Principe said that while the rest of his colleagues didn't treat him differently because of his disability, he had issues with his supervisor, Serpico. *See* [71] ¶ 16. Serpico regularly talked down to and swore at Principe, which made plaintiff anxious. *See* [71] ¶¶ 16, 22.[7] Principe said that the mayor often swore at others, Serpico treated him differently because Principe wasn't in the mayor's inner circle, and that Serpico swore at him because Principe was more vulnerable than others. *See* [79] ¶¶ 16, 22. Principe said Serpico forced him to take certain actions as part of his employment, but not because of Principe's disability. *See* [71] ¶ 23. Serpico said that he thought Principe was "fragile" and that he tried to make Principe feel good about himself. *See id.* ¶ 16. The parties dispute whether Principe tried to address his problems with Serpico. *See id.*

According to Principe, in 2017 Serpico said that he wished everybody had Principe's problems because it would make compliance with Village residency requirements easier. *See* [71] ¶ 16. A year later, Principe went on medical leave from his position because of something that Serpico said. *See* [79] ¶ 4.[8]

---

[7] Principe also said that another Village employee swore at him, but wasn't sure if that person used foul language because of Principe's disability. [71] ¶ 25.

[8] According to Principe, the mayor's secretary said that Serpico called Principe a slur. *See* [79] ¶ 4; [71] ¶ 16. What the mayor's secretary said is admissible to show its effect on Principe, *see United States v. Shaw*, 824 F.3d 624, 630 (7th Cir. 2016), and plaintiff testified that he went on medical leave in 2018 as a result of what he heard. *See* [79] ¶ 4. Defendants attempt to controvert the asserted fact that Principe went on leave because of what Serpico said, but the testimony they cite doesn't directly controvert the fact asserted, *see* [55] at 298–300, and

On January 30, 2020, Principe overheard a phone call between Serpico and Serpico's assistant. [71] ¶ 15; [79] ¶ 14. Principe was in a room with the assistant, who answered the call on her cellphone. *See* [71] ¶ 15; [79] ¶ 14. Principe said that Serpico was screaming and swearing loudly, and that others in the office could also hear the call. *See* [71] ¶ 15; [79] ¶ 14. Principe heard the mayor say that he had had it with "Jim," and asked, "Where the fuck is that retard going to go and get a job making what he's making with the problem that he's got[?]" *See* [71] ¶ 15; [79] ¶ 14.[9] Principe believed the mayor was referring to him and began to shake, sweat, and throw up. [71] ¶ 15.[10]

After overhearing the phone call, Principe submitted a request for time-off, asking to take the rest of the day. *See* [79] ¶ 15; [70] at 116. In the comments section on the time-off sheet, Principe wrote "Half day after being called a mother fucker + cunt by Mayor Ronald Serpico." [70] at 116; *see* [79] ¶ 15. He later said that he forgot to add that Serpico had called him a "retard" as well. [70] ¶ 15. Principe gave Piemonte (who was meeting with Principe's subordinates) the time-off sheet and told

---

at summary judgment defendants don't get the benefit of inferences in their favor. But Principe cannot offer the secretary's statement to prove that Serpico called him a slur. The secretary's attribution of the statement to Serpico, offered for the truth of that attribution, is hearsay. *See* Fed. R. Evid. 801(d)(2); *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017) (citing Fed. R. Civ. P. 56(c)(2)); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742–43 (7th Cir. 1997) ("Evidence offered at summary judgment must be admissible to the same extent as at trial.").

[9] Defendants dispute the contents of the call and whether "Jim" referred to plaintiff. *See* [79] ¶ 14. That Principe wasn't present for the entire conversation does not mean that he lacks personal knowledge of the portions of the call that he heard. *See* Fed. R. Evid. 602.

[10] Principe's doctor noted that his conditions were worse at a February 10 appointment and increased Principe's medication. *See* [71] ¶ 16. The doctor said that Principe was having a work conflict. *Id.*

her "you'll be hearing from my attorney." *See* [79] ¶ 15; [71] ¶ 38. Principe kissed his subordinates on the cheek and left. [71] ¶ 38. He believed that the time-off request was a complaint of discrimination and hostile work environment. *Id.*

After Principe gave Piemonte his time-off sheet, Piemonte called Serpico and told him what had happened. [79] ¶ 20. Piemonte called the police to Village Hall out of security concerns, and had police officers deliver Principe's notice of administrative leave. *See* [79] ¶ 36. Serpico didn't remember speaking with Piemonte, and didn't see Principe's time-off sheet. *See* [79] ¶ 20; [64-2] at 159–60. Serpico, Piemonte, and another employee who was present when Principe handed in his time-off sheet believed that he had quit, rather than filed a complaint. *See* [79] ¶ 19. Piemonte said she could have called Principe to confirm whether he had resigned, but that she did not do so. *Id.*

That day, Principe filed a charge with the Equal Employment Opportunity Commission against the Village and Serpico alleging disability discrimination and retaliation. [79] ¶ 18; [70] at 52. Principe described the particulars of his complaint as having been "threatened with termination and subjected to continual verbal abuse." [70] at 52. On February 8, Principe's attorney sent a copy of the charge to the Village. [79] ¶ 18. About three weeks later, Principe filed a supplemental charge with the EEOC, which added allegations against Piemonte. [70] at 53; [79] ¶ 18.

## B.    Investigation and Termination

On the same day that Principe left the office early—January 30—the Village began an investigation of Principe. *See* [79] ¶ 21; [71] ¶ 43. There were many reasons

8

why the Village initiated its investigation, including (1) Principe's complaints about Piemonte's raise; (2) Principe's emails to vendors about Piemonte becoming the contact person for the Village; and (3) Principe placing documents in Piemonte's mailbox and telling her that they were hers to handle. [71] ¶ 44; [79] ¶ 21. Principe believed that the Village investigated him because Serpico hated Principe's attorney, and that he wouldn't have been investigated if he had hired a different lawyer. *See* [71] ¶ 19. Piemonte said that the investigation didn't have anything to do with the time-off slip that Principe had submitted or with his EEOC charge, [71] ¶ 43, but also that the investigation started because Principe walked away from his work on January 30. *See* [79] ¶ 21.

Piemonte sent Principe a letter notifying him that the Village was placing him on paid administrative leave pending the outcome of the investigation. *See* [79] ¶ 21; [70] at 48–49. The letter specified that the investigation related to "insubordination; creating a hostile work environment; job abandonment; and various alleged violations of the Employee Handbook." [70] at 48; [79] ¶ 21. While on leave, Principe continued to receive his pay and benefits but was prohibited from exercising his duties on behalf of the Village, and his cellphone, email, and credentials to access work files were disabled. *See* [70] at 48; [79] ¶ 21. There's a dispute as to whether other Village employees were told not to speak with Principe while he was on leave. *See* [79] ¶ 22.[11]

---

[11] What the employees were told isn't hearsay because the Village director's instruction not to talk to Principe isn't being offered for the truth of the matter asserted, but instead to show a verbal act. *See Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007) (quoting the Advisory Committee Notes to Fed. R. Evid. 801(c)); *see also United States v. Moreno*, 233 F.3d 937, 940 (7th Cir. 2000) (a verbal act isn't hearsay).

Serpico hired a law firm to handle the investigation. [79] ¶ 23.[12] Two attorneys spent three or four days interviewing twenty-seven Village employees and officials, including Serpico,[13] Piemonte, and Principe. [71] ¶¶ 45–46; *see* [79] ¶ 23.[14] The attorneys also considered Principe's personnel and medical files. *See* [79] ¶ 23. Serpico said that the Village learned during the course of the investigation that Principe had brought his gun to the office. *See* [71] ¶ 47. The investigating attorneys recommended termination for cause. [71] ¶ 49.[15]

The Village terminated Principe's employment on February 13, 2020, the same day that he was interviewed as part of the investigation. *See* [79] ¶¶ 1, 40; [71] ¶ 48. Serpico decided to fire Principe based on the recommendation of the Village's attorneys. [71] ¶ 50. Piemonte wasn't familiar with the specifics of the investigation, but collaborated with the attorneys to draft Principe's termination letter. *See* [79] ¶ 40. That letter spelled out numerous reasons for termination: (1) violation of employee rules and regulations; (2) acting unprofessionally; (3) interfering with

---

[12] The parties dispute whether the Village investigated Principe's complaint about Serpico's comments, *see* [79] ¶ 19, and it's unclear what actions, if any, the Village took to address Principe's allegations made on his time-off sheet. It's undisputed that Principe's conduct on January 30 was part of the basis for the attorney-led investigation. *See id.* ¶ 21.

[13] Principe admitted (in response to defendant's statement of fact) that Serpico was interviewed as part of the Village's internal investigation. *See* [71] ¶ 46. Plaintiff's opportunity to controvert that fact was in his response to defendants' statement of fact. *See* N.D. Ill. Local R. 56.1(e)(3). I ignore Principe's contrary assertion made in his own statement of material facts. *See* [79] ¶ 40.

[14] Principe said his interview was conducted in a hot room, which made his anxiety worse. *See* [79] ¶ 1. Principe also said that investigators asked him vague questions. *Id.* ¶ 21.

[15] The Village had previously conducted two internal investigations using attorneys. *See* [79] ¶ 24. Piemonte said that Principe was the only Village employee to be placed on administrative leave during her tenure at the Village. *Id.*

Village operations; (3) performing non-work related activities during working hours; (4) interfering with other employees; (5) failing to treat other employees with respect; (6) using abusive language; (7) using profanity; (8) smoking; (9) insubordination; (10) harassment and the creation of a hostile work environment; and (11) possession of a firearm on Village property. [71] ¶ 48; [49-14]. The mayor said that, in addition to the reasons recommended by the investigators, he also fired Principe because Principe (1) was upset by the change to Village protocol authorizing Piemonte as a signatory on checks; (2) caused a disturbance by spreading information about Piemonte's pay; and (3) sent unauthorized e-mails to Village vendors. [71] ¶ 50. Principe later said that the Village retaliated against him because "if you go against Ron Serpico, you're going to pay the consequences." *See* [71] ¶ 18 (citing [55] at 85:4–22).

Principe received a right-to-sue letter from the EEOC, [71] ¶ 10, and filed this lawsuit against the Village, Serpico, and Piemonte. [26]. He brings claims for (1) discrimination and harassment under the Americans with Disabilities Act; (2) retaliation under the ADA and Title VII; (3) violation of the Equal Protection Clause; (4) violation of the Illinois Whistleblower Act; and (5) indemnification. *Id.*

## III. Analysis

### A. Discrimination

The Americans with Disabilities Act prohibits disability discrimination in employment. 42 U.S.C. § 12112(a); *see Bilinsky v. American Airlines, Inc.*, 928 F.3d 565, 569 (7th Cir. 2019). To prove that he was discriminated against in violation of the ADA, Principe must show that (1) he was disabled; (2) he was otherwise qualified

to perform essential functions of his position with or without reasonable accommodation; and (3) disability was the "but for" cause of the adverse employment action(s) he suffered. *Castetter v. Dolgencorp, LLC*, 953 F.3d 994, 996 (7th Cir. 2020) (quoting *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019)). Adverse employment actions—such as termination or reduction in compensation or benefits— materially alter the terms and conditions of employment. *See Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 729 (7th Cir. 2020) (citations omitted).

One way of proving employment discrimination under the ADA is the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016). Under that approach, Principe must make a prima facie case of discrimination. *See Igasaki v. Illinois Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). If he does, the Village must then offer a nondiscriminatory motive for their actions, which can be rebutted if the plaintiff shows that the stated reason was a pretext for discrimination. *See id*; *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 601–02 (7th Cir.). Under either the *Ortiz* or *McDonnell Douglas* approach, I evaluate all of the evidence as a whole. *Ortiz*, 834 F.3d at 766. The question, under any theory of discrimination, is whether the evidence would permit a reasonable factfinder to conclude that Principe would not have suffered an adverse action but for his disability. *Id.* at 764–65.

Principe brings his discrimination claim against the Village, and argues that it discriminated against him by placing him on administrative leave during its

12

investigation and then firing him. [64] at 12–16; [26] ¶¶ 87–94. It's undisputed that Principe was disabled and qualified to perform the essential functions of his job. *See* [50] at 3–12. The issues are (1) the adverse action(s) the Village allegedly took, and (2) causation.

### 1. *Adverse Action*

Principe claims that he suffered two adverse employment actions: the first when the Village placed him on administrative leave and investigated; the second when he was fired. *See* [64] at 18. As the Village acknowledges, *see* [50] at 3–5, being fired is an adverse action under the ADA because it materially affects the terms and conditions of employment. *See Kurtzhals*, 969 F.3d at 729; *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004).

Placing an employee on administrative leave during the course of an investigation where the employee's position, salary, and benefits aren't impacted isn't a materially adverse action. *See Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 786–87 (7th Cir. 2007) (citations omitted) (discussing adverse action in the context of Title VII retaliation claim);[16] *see also Morse v. Illinois Dep't of Corr.*, 191 F.Supp.3d 848, 858 (N.D. Ill. 2015) (an employee placed on administrative leave suffered an adverse action where the leave resulted in the loss of sick time and unpaid leave); *Harris v. City of Chicago*, 479 F.Supp.3d 743, 751 (N.D. Ill. 2020) (an employee

---

[16] The standard for adverse action in retaliation cases is "lower than that required for a discrimination claim." *Chaib v. Indiana*, 744 F.3d 974, 986 (7th Cir. 2014), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) (citation omitted). An employment action that is not sufficiently adverse to be retaliation is therefore insufficient for discrimination.

placed on administrative leave suffered an adverse action where the employee wasn't allowed to earn overtime, was forced to use medical leave, and his future career prospects were negatively impacted).

While Principe was on administrative leave, he received his regular pay and benefits but was prohibited from exercising his duties and his cellphone, email, and credentials to access work files were disabled. *See* [70] at 48–49; [79] ¶ 21. Plaintiff argues that his position was altered because the conditions of administrative leave diminished his material responsibilities. *See* [64] at 18 (citing *Crady v. Liberty Nat'l Bank & Tr. Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)). It's true that while on leave Principe couldn't exercise authority, complete work, or access Village resources in the same way he had before to the investigation. *See* [70] at 48–49. But his status was temporary, *see id.*, and that kind of inconvenience isn't a material change to an employee's position. *See Nichols*, 510 F.3d at 786–87; *Kurtzhals*, 969 F.3d at 729. The only adverse action that Principe suffered was his termination.

2. *Causation*

Relying primarily on circumstantial evidence, Principe wants his case analyzed under the burden-shifting framework. *See* [64] at 12–27. But the strongest evidence for discrimination in this case is direct: Principe testified that, in a phone call with another person that plaintiff overheard, Serpico referred to Principe as a "retard" and said that Serpico had "had it" with him. *See* [71] ¶ 15; [79] ¶ 14. Principe complained and two weeks later the Village fired him. [79] ¶¶ 18, 40; [71] ¶ 43.

Isolated comments that are causally related to the termination process or are made at the same time as termination can be proof of discrimination. *See Castetter v. Dolgencorp, LLC*, 953 F.3d 994, 997 (7th Cir. 2020) (citing Justice O'Connor's concurrence from *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) and *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996)); *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1072 (7th Cir. 2012) (quoting *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 721 (7th Cir. 2008)) ("A remark can raise an inference of discrimination when it 'was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action.'"); *Hunt v. City of Markham, Illinois*, 219 F.3d 649, 652–53 (7th Cir. 2000) (citations omitted) (derogatory comments by a decisionmaker made around the time of an adverse action created a reasonable inference that the decision was influenced by discrimination).

The slur at issue here can be used in a more general, derogatory sense, but one reasonable inference is that Serpico was referring to Principe's disability.[17] And there's a causal connection between Serpico's statement and Principe's termination. *See Castetter*, 953 F.3d at 997 (citing *Geier*, 99 F.3d at 242). Serpico said he'd "had it" with Principe, *see* [71] ¶ 15; [79] ¶ 14, which a jury might understand to mean the

---

[17] The word means "a stupid or mentally slow person." *Retard*, Cambridge Online Dictionary (Cambridge University Press 2021). The term is increasingly considered a slur. *See* Avery B. Albert et al., *Sticks, Stones, and Stigma: Student Bystander Behavior in Response to Hearing the Word "Retard"*, 54 Intellectual and Developmental Disabilities 391–401 (2016); Special Olympics, *Why the R-Word Is the R-Slur*, https://www.specialolympics.org/stories/impact/why-the-r-word-is-the-r-slur (last visited Jan. 25, 2022). Federal law now uses "intellectual disability" rather than "mental retardation." *See* "Rosa's Law," Pub L. No. 111-256, 124 Stat. 2643 (2010); *Hall v. Florida*, 572 U.S. 701, 704 (2014).

mayor was going to fire him. Serpico was the final decision-maker for Principe's termination, *see* [71] ¶ 50, and fired plaintiff just two weeks after the phone call at issue. *See* [71] ¶¶ 15, 48; [79] ¶¶ 14, 40. A jury could take the close proximity between the call and the termination as evidence of discriminatory intent. *See Dass*, 675 F.3d at 1072.

The Village disputes whether Serpico was referring to Principe and whether the mayor said the word. *See* [79] ¶ 14. But Principe's testimony creates a genuine dispute about what Serpico said, and in turn, what he meant. *See Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir. 1999). While Serpico's comment provides a sufficient basis to decide the causation question (and the motion as to plaintiff's discrimination claim), the parties don't focus on the phone call, but instead on circumstantial evidence of discrimination. *See* [50] at 3–12; [64] at 12–27.

In 2017 Serpico mockingly referred to Principe's disability, *see* [71] ¶ 16; [79] ¶ 17, a year later Principe believed the mayor said something that led Principe to go on medical leave, *see* [79] ¶ 4, and Serpico regularly swore at and talked down to plaintiff. *See* [71] ¶¶ 16, 22. Serpico's 2017 reference to Principe's disability is weak evidence for discrimination, both because it's not clear that Serpico expressed animosity towards Principe's mental disorders and because of the long gap—three years—between when Serpico allegedly said that he wished everyone had Principe's disabilities and the end of Principe's employment. *See Geier*, 99 F.3d at 242 (a comment made a year before an employee's discharge wasn't temporally related to the dismissal); *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 581 (7th Cir. 2015) (a

comment made two years before an employee's termination wasn't temporally related). That Serpico said something that led to Principe's 2018 anxiety attack doesn't lend much support to the case for discrimination, either, since plaintiff hasn't offered admissible evidence that Serpico's statement (made two years before the termination) was discriminatory or causally related to his termination. *See Castetter*, 953 F.3d at 997. Serpico's alleged verbal mistreatment of Principe suggests that the mayor disrespected him, but disrespect isn't the same as discrimination, *see Hancock v. Potter*, 531 F.3d 474, 480 (7th Cir. 2008), and Principe hasn't shown how the mayor's verbal abuse was related to disability.[18]

Despite the weaknesses in this circumstantial evidence, Principe makes out a prima facie case of discrimination based largely on the phone call he overheard on January 30, from which a jury could conclude that discriminatory animus drove the Village's decision to fire plaintiff. *See Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014) (citing *Dickerson v. Bd. of Tr. of Cmty. Coll. Dist. No. 522,* 657 F.3d 595, 601 (7th Cir. 2011)) (a plaintiff shows causation by "tying an adverse employment action to a discriminatory animus").

The Village offers a long list of reasons for the firing, *see* [79] ¶ 40; [71] ¶¶ 48–50, none of which are discriminatory.[19] To show that defendant's reasons are

---

[18] That profanity was part of the workplace culture at the Village, *see* [79] ¶ 30, also undermines the idea that Serpico's language was directed at Principe's disability.

[19] Serpico said he fired Principe based on the recommendation of the attorney-led investigation. *See* [71] ¶ 50. A termination letter indicated that Principe was fired for (1) violation of employee rules and regulations; (2) acting unprofessionally; (3) interfering with Village operations; (3) performing non-work related activities during working hours; (4) interfering with other employees; (5) failing to treat other employees with respect; (6) using abusive language; (7) using profanity; (8) smoking; (9) insubordination; (10) harassment and

pretextual, Principe needs to prove that the Village's rationale for firing him was dishonest and that the true reason was discrimination. *See Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007). The issue isn't the fairness or accuracy of the Village's reasoning, but the honesty of the Village's belief in the reasons stated. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011) (citations omitted).

Principe wants to demonstrate that the Village's reasons are a lie by pointing to similarly situated, non-disabled employees who were better treated. *See* [64] at 25–26. To show that he is similarly situated to another employee, Principe needs to prove that the individual is "directly comparable to [him] in all material respects." *Monroe v. Indiana Dep't of Transp.*, 871 F.3d 495, 507 (7th Cir. 2017) (internal citations and quotations omitted) (for similarly situated comparisons to work, there must be enough common factors to allow for a meaningful comparison to determine whether intentional discrimination explains any differences). Important points of comparison include (1) whether the employees had the same supervisor; (2) whether they were subject to the same standards; and (3) whether they had a comparable set of failings. *See id.* at 507, 509 (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) and citing *Henry v. Jones*, 507 F.3d 558, 566 (7th Cir. 2007) and *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 751–52 (7th Cir. 2006)).

---

the creation of a hostile work environment; and (11) possession of a firearm on Village property. [71] ¶ 48; [49-14]. In addition to the reasons recommended by the investigators, Serpico said he also made the decision because Principe (1) was upset by the change to Village protocol authorizing Piemonte as a signatory on checks; (2) caused a disturbance by spreading information about Piemonte's pay; and (3) sent unauthorized e-mails to Village vendors. [71] ¶ 50.

Compared to the Village's list of Principe's failings, *see* [79] ¶ 40; [71] ¶¶ 48–50, the other employees each failed in only one or two of the ways that Principe did. *See* [64] at 25–26.[20] These individuals aren't good comparisons with Principe because they don't share a comparable *set* of failings with him. *See Monroe*, 871 F.3d at 509 (a plaintiff whose misconduct occurred over a lengthy period of time wasn't comparable to employees whose misconduct was confined to individual incidents a year apart); *Burks*, 464 F.3d at 751 (an employee who failed in one out of three ways a plaintiff did wasn't a good comparator). While some of the proposed comparators shared a supervisor with Principe and appear to have been subject to the same standards, *see* [71] ¶ 42; [79] ¶¶ 3, 25–27, 35, there's no meaningful comparison to be drawn because the employees and Principe differed in material respects. *See Monroe*, 871 F.3d at 507. Principe's comparators weren't similarly situated to him, and the evidence about these employees doesn't cast doubt on the Village's reasons for firing Principe.[21]

---

[20] Principe said Piemonte used abusive language towards other employees. *See* [71] ¶ 42. Piemonte also had a profane exchange with Principe's wife on social media and was disciplined as a result. *See* [79] ¶ 25; [71] ¶ 39. Another Village director was accused of swearing at an employee and of sexual harassment. *See* [71] ¶ 40; [79] ¶ 25. A Village employee (not a director) outside of Principe's department sent lewd photographs to a colleague and was suspended. [79] ¶ 26. Principe said that two other directors smoked on Village property but weren't disciplined. *See id.* ¶¶ 3, 35.

[21] *Coleman v. Donahoe* involved comparators who "broke the same rule" that a plaintiff did, not (as in this case) comparators who broke only one or two of many rules that a plaintiff did. 667 F.3d 835, 857 (7th Cir. 2012). Principe's argument that rules were selectively enforced against him, *see* [64] at 26, doesn't succeed because he hasn't shown that his colleagues who weren't punished for smoking or swearing were similarly situated. *See id.* (evidence of selective enforcement of a rule can show pretext, but depends on a showing that "similarly situated employees" received more favorable treatment); *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 891 (7th Cir. 2001).

But even though Principe's circumstantial evidence of comparators falls short, there's still reason to doubt the honesty of the Village's explanation.[22] Principe was fired two weeks after overhearing Serpico's phone call and filing his complaint with the EEOC, *see* [71] ¶¶ 10, 15, 48, timing that raises a suspicion of discrimination. *See Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 684 (7th Cir. 2014). Principe also testified that he had permission to play games, bring his gun to work, and park his car in a no-parking zone, three of the Village's reasons for firing him. *See* [71] ¶¶ 27–28, 30; [79] ¶ 33. That Principe was fired at least in part for conduct that was authorized by supervisors is a second reason to doubt the honesty of the Village's explanation. *See McKinney v. Off. of Sheriff of Whitley Cnty.*, 866 F.3d 803, 813–14 (7th Cir. 2017).[23]

---

[22] Some of the weakness in Principe's case comes from his own testimony. He testified that he wouldn't have been investigated if he had hired a different attorney. *See* [71] ¶ 19. He also said that the mayor treated him differently because he wasn't in Serpico's inner circle. *See* [79] ¶ 16. While these statements undercut plaintiff's claim that the reason he was fired was disability discrimination, they're not conclusive on that point. *See Keller v. United States*, 58 F.3d 1194, 1198–99 n.8 (7th Cir. 1995) (citations omitted) (distinguishing between judicial admissions, which are "formal concessions in the pleadings, or stipulations by a party or its counsel ... that are binding upon the party making them," and the admission of a fact adverse to a claim or defense by a party testifying during a deposition, which is treated "solely as an evidentiary admission."). Just because Principe has a different opinion on the reason for his firing doesn't mean he can't succeed on his disability claim through other evidence. *See Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996) (citing Fed. R. Evid. 801(d)(2) and *Keller*, 58 F.3d at 1198 n.8) (admissions not made in a pleading or in a response to a request for admissions are "admissible as evidence" and are usually true, but are not conclusive on the issue admitted).

[23] The Village argues that *McKinney* is distinguishable because that case involved "ample evidence" that an employee had permission to do what he was later fired for. *See* [80] at 7 (citing *McKinney v. Off. of Sheriff of Whitley Cnty.*, 866 F.3d 803, 810 (7th Cir. 2017)). While Principe's evidence is thinner—resting only on his testimony—Principe wasn't required to show "ample evidence" that he was allowed to smoke, bring a gun to work, or play video games, because evidence isn't weighed at this stage of the case. *See Johnson v. Advocate Health & Hosps. Corp*, 892 F.3d 887, 893 (7th Cir. 2018) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

Finally, there's evidence that the investigation into Principe's allegations was nonexistent or half-hearted.[24] There's a dispute about whether the Village looked into Principe's allegations that Serpico swore at him. *See* [79] ¶ 19. While the Village may have understandably taken Principe's actions on January 30 to be a resignation, rather than a complaint about discrimination, *see* [71] ¶ 38; [79] ¶¶ 19, 39, a failure to thoroughly investigate Principe's allegations on his time-off sheet, combined with other circumstantial evidence, casts doubt on defendants' stated reasons for the firing. *See Harden v. Marion Cnty. Sheriff's Dep't*, 799 F.3d 857, 864 (7th Cir. 2015) (sham investigations are typically circumscribed so as to lead to a desired outcome); *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 407 (7th Cir. 2007) (citations omitted) (a failure to investigate an employee's claims before terminating that employee was evidence of pretext given other circumstantial evidence that the employee was set up).[25]

---

[24] Principe also argues that the scope and magnitude of the investigation, his lack of disciplinary history, and the Village's shifting explanations for investigating and terminating him show that the Village's reasons were a lie. *See* [64] at 18–19. None of these things show pretext, however. The Village had previously conducted two internal investigations using attorneys, *see* [79] ¶ 24, and the scope of the investigation in this case (lasting three or four days, involving two attorneys and twenty-seven witnesses) suggests a thorough job, not a fishing expedition. *See* [71] ¶ 46. The evidence of Principe's disciplinary history is mixed, *see* [79] ¶ 5, and nothing about his previous work at the Village shows that the Village didn't believe the stated reasons for the firing. Principe's mixed disciplinary history (wherein he was criticized by his superiors on several occasions), distinguishes his case from *Lang v. Illinois Dep't of Children & Family Servs.*, 361 F.3d 416, 420 (7th Cir. 2004). While the Village offered a long list of reasons for terminating Principe, *see* [71] ¶¶ 48–50, those justifications were not so inconsistent or implausible as to raise suspicions of pretext. *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 577 (7th Cir. 2015).

[25] The Village is right that Principe's case is distinguishable from *Humphries* because Principe was interviewed as part of the Village's disciplinary process, *see* [71] ¶ 46, while the employee in *Humphries* was not. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 407 (7th Cir. 2007). But *Humphries* is relevant because, like that case, this one involves an allegedly nonexistent investigation into an employee's complaint and there are other indicators of

The timing of the termination, failure to investigate Principe's allegations, and the Village's inconsistent disciplinary practices support Principe's discrimination claim.[26] Add to that the phone call in which Principe's supervisor used a harsh term for a disabled person and said he'd had it with him, and a jury could conclude that Principe wouldn't have been fired but for his disability. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764–65 (7th Cir. 2016). Of course a jury is not required to reach that conclusion, and the Village has plenty of evidence that, if credited, justifies firing Principe. But that's what a trial, not summary judgment, is for. The Village's motion is denied as to the discrimination claim.

## B. Hostile Work Environment

Principe brings claims for harassment under the ADA against the Village and under 42 U.S.C. § 1983 against Serpico. [26] ¶¶ 87–94, 102–106.[27] To prove

---

pretext. The credibility of plaintiff's evidence calling into doubt the legitimacy of the investigation isn't at issue, because credibility isn't decided at summary judgment. *See Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019) (citing *Palmer v. Franz*, 928 F.3d 560, 565 (7th Cir. 2019)).

[26] This evidence of pretext distinguishes Principe's case from those cited by the Village. *See Fonseca v. Spraying Sys. Co.*, 466 F.Supp.3d 834, 847 (N.D. Ill. 2020) (a plaintiff offered no evidence rebutting defendants' reasons for a termination); *Smith v. Dep't of Hum. Servs*, Case No. 17-cv-3786, 2020 WL 887486, at *12 (N.D. Ill. Feb. 24, 2020) (same); *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 627–29 (7th Cir. 2001) (suspicious timing alone wasn't enough to show pretext); *Teruggi v. CIT Group/Cap. Fin., Inc.*, No. 11 C 216, 2012 WL 1570770 (N.D. Ill. May 3, 2012) (finding no evidence of pretext where an employer's investigation wasn't too short and isolated comments referencing a plaintiff's age weren't made at the time or in reference to a plaintiff's discharge).

[27] It's not clear that Principe's § 1983 claim—alleging a violation of the Fourteenth Amendment on the basis of disability harassment—is viable. Equal Protection harassment claims are actionable when they involve suspect classes. *See, e.g., Bohen v. City of E. Chicago, Indiana*, 799 F.2d 1180, 1185 (7th Cir. 1986) (sex); *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 835 (7th Cir. 2015) (religion and nationality); *Huff v. Sheahan*, 493 F.3d 893, 904 (7th Cir. 2007) (race). Such claims generally require the same elements as parallel claims under Title VII and the ADA. *Compare Huri*, 804 F.3d at 835

harassment under the ADA, Principe must show that (1) he was subject to unwelcome harassment; (2) the harassment was based on his disability; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *See Ford v. Marion Cnty. Sheriff's Office*, 942 F.3d 839, 856 (7th Cir. 2019). Whether a hostile environment existed depends on the totality of the circumstances, including the frequency and severity of the conduct, whether the conduct was threatening, humiliating, or merely an offensive utterance, and whether the conduct unreasonably interfered with an employee's work performance. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–17 (2002) (citing *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 21 (1993)).

At issue here is the severity of the alleged harassment and whether it was based on Principe's disability. *See* [50] at 13–14. Principe said that Serpico (1) used a

---

*with Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 856 (7th Cir. 2019). But disability isn't a suspect classification. *See City of Cleburne, Texas v. Cleburne Living Cent.*, 473 U.S. 432, 442–47 (1985); *Erickson v. Bd. of Governors of State Colleges & Universities for Ne. Illinois Univ.*, 207 F.3d 945, 949 (7th Cir. 2000) (citations omitted) ("A rational-basis test applies to distinctions on the ground of disability."). While the ADA prohibits employers from harassing employees on the basis of disability, *see Ford*, 942 F.3d at 856, plaintiff hasn't shown that the right to be free from such harassment is also protected by the Fourteenth Amendment. *See Chick v. Cnty. of Suffolk*, 546 Fed. App'x 58, 60 (2d Cir. 2013) (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 607 (2008)) (affirming dismissal of a disability discrimination claim brought under 42 U.S.C. § 1983 because disability isn't a suspect classification and a "class of one" doesn't exist in the public employment context.). If such a claim exists, however, it would rise and fall with plaintiff's ADA harassment claim. *See Huri*, 804 F.3d at 835 (citation omitted) ("When a plaintiff uses § 1983 as a parallel remedy to a Title VII harassment claim, the *prima facie* elements to establish liability are the same under both statutes."). Absent a showing that plaintiff's constitutional right to be free from disability harassment was "clearly established at the time the conduct occurred," *id.*, however, Serpico is entitled to judgment as to this claim on the basis of qualified immunity. *See* [28] at 31.

slur for disability among other curse words in a January 2020 phone call that Principe overheard, *see* [71] ¶ 15; [79] ¶ 14; (2) mockingly referred to Principe's disability in 2017, *see* [71] ¶ 16; (3) said something that led to Principe going on medical leave in 2018, *see* [79] ¶ 4; and (4) regularly swore at and talked down to plaintiff. *See* [71] ¶¶ 16, 22.

There is no "magic number" of instances or type of slur required to prove a hostile work environment. *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017) (quoting *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)). Instead, courts look to the pervasiveness and severity of the language used, which are inversely related. *Id*. The slur is arguably a severe word, but plaintiff testified that Serpico referred to him that way only one time,[28] and that Serpico was speaking to a third party at the time, not directly with Principe. *See* [71] ¶ 15; [79] ¶ 14. The other time that Serpico said something about Principe's disability was three years earlier, and the language he used then was much less offensive. *See* [71] ¶ 16. The significant gap in time between these alleged incidents of discriminatory harassment weakens plaintiff's claim. *See Ford*, 942 F.3d at 852 (citing *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 713 (7th Cir. 2017) and *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 727 (7th Cir. 2004)).

Principe argues that "Serpico regularly and expressly referred to his disability while harassing him," [64] at 13, but that's not supported, either by Principe's

---

[28] Plaintiff also testified that Serpico's secretary said that Serpico used the slur in reference to Principe, *see* [79] ¶ 4, but that statement is inadmissible to prove that Serpico said the slur. *See* above at note 8.

24

deposition testimony, *see* [71] ¶¶ 16, 22, or by other evidence. While Serpico's swearing and talking down to Principe may have been offensive and caused plaintiff anxiety, there's no indication that what the mayor said had anything to do with Principe's disability. *See Ford*, 942 F.3d at 856 (actionable harassment must be "based on" a plaintiff's disability); *Cole v. Bd. of Tr. of N. Illinois Univ.*, 838 F.3d 888, 896 (7th Cir. 2016) (quoting *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014)) (internal quotation marks omitted) ("Although a connection between the harassment and the plaintiff's protected class need not be explicit, there must be *some* connection, for not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a" protected minority.).[29]

Principe argues that he was harassed because other employees were told not to speak with him while he was on administrative leave. *See* [64] at 16; [79] ¶ 22. He adds that another employee sometimes swore at him, [71] ¶ 25, and he had coarse interactions with Serpico and Piemonte. [79] ¶ 17; [71] ¶ 26. Also in the mix, the Village called the police after Principe left work, [79] ¶ 36, and Piemonte kept his personnel file under lock and key. *Id*. ¶ 38. But Principe hasn't shown that any of this conduct was based on his disability, and so it isn't evidence that Principe was subject to a hostile work environment under the ADA. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004).

---

[29] *MacVaugh v. Cnty. of Montgomery* is distinguishable: at issue in that case was a motion to dismiss, not a motion under Rule 56, and the alleged harassment in *MacVaugh* was more clearly based on a plaintiff's disability. 301 F.Supp.3d 458, 466–67 (E.D. Pa. 2018).

The harassment that plaintiff complains of wasn't objectively severe or pervasive. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840–41 (7th Cir. 2009) (occasional inappropriate comments and conduct that wasn't physically threatening weren't objectively severe or pervasive). It consisted of "offhand comments, isolated incidents, and simple teasing," and didn't alter the terms and conditions of Principe's employment. *See id.* (citing *Adusumilli v. City of Chicago*, 164 F.3d 353, 361–62 (7th Cir. 1998)). The motion for summary judgment is granted as to plaintiff's hostile work environment claims.

## C.    Retaliation and Indemnification

Principe brings retaliation claims under the ADA, Title VII, and the Illinois Whistleblower Act. [26] ¶¶ 95–101, 107–115. Principe's federal claims require proof that he suffered an adverse action because he engaged in statutorily protected activity. *See Kotaska v. Federal Express Corp.*, 966 F.3d 624, 632 (7th Cir. 2020); *Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021).[30] Under both the ADA and Title VII, protected activity is when an employee opposes his employer's non-compliance with the statute, *see* 42 U.S.C. § 12203(a); 42 U.S.C. § 2000e-3(a), and adverse actions are those that would dissuade a reasonable employee from engaging

---

[30] The parties agree that the standards for retaliation under the ADA and Title VII are the same. *See* [64] at 16; [50] at 3; *see also Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (citations omitted) (finding that the two acts have similar prohibitions on retaliation and that "courts look to Title VII retaliation cases for guidance in deciding retaliation cases under the ADA").

in protected activity. *Koty v. DuPage Cnty., Illinois*, 900 F.3d 515, 520 (7th Cir. 2018); *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007).

Illinois law prohibits employers from retaliating against an employee who discloses information to an enforcement agency where the employee "has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). To prove retaliation under the Illinois Whistleblower Act, a plaintiff must show evidence of retaliatory motive. *See Williams v. Off. of Chief Judge of Cook Cnty. Illinois*, 839 F.3d 617, 627 (7th Cir. 2016) (citing *Michael v. Precision Alliance Grp., LLC*, 351 Ill.Dec. 890 (5th Dist. 2011)).

Principe argues that his complaint to human resources on his time-off sheet and related threat to hire a lawyer qualify as protected activities. *See* [64] at 17–18. An informal complaint to a supervisor may be a statutorily protected activity, but the complaint must be about discrimination. *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) (citation omitted) (To qualify, an informal complaint must be about discrimination or there must be "sufficient facts to raise that inference."); *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (finding that an employee's question to her supervisor—"Aren't you being discriminatory?"—was protected activity); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.").

Threatening to file a disability discrimination complaint with the EEOC can be a protected activity under the ADA. *See Aviles v. Cornell Forge Co.*, 183 F.3d 598, 603 (7th Cir. 1999). But Principe didn't do that. He gave Piemonte a request for time off that said Serpico had called him names (but didn't specify anything that would put human resources on notice that disability discrimination or harassment was at issue), and told the Village's HR director that "you'll be hearing from my attorney." *See* [79] ¶ 15; [71] ¶ 38; [70] at 116. Nothing about the time-off sheet or what Principe said mentioned disability discrimination or could raise an inference that he was making that kind of complaint. Principe's first charge to the EEOC was a protected activity under the ADA. *See Tomanovich*, 457 F.3d at 663. What he wrote on his time-off sheet and his threat to hire a lawyer were not. *See Andonissamy*, 547 F.3d at 851.

There are allegations of sexual harassment in the complaint, *see* [26] ¶¶ 20, 32, 49, and in Principe's supplemental EEOC charge filed after he was fired. *See* [70] at 53; [79] ¶¶ 1, 40; [71] ¶ 48. But neither Principe's time-off sheet nor the first EEOC charge mentioned discrimination on the basis of sex, or because of some other characteristic protected by Title VII. *See* [70] at 52, 116; *Tomanovich*, 457 F.3d at 663 (citation omitted) (To constitute protected activity a complaint "must indicate the discrimination occurred because of sex, race, national origin, or some other protected class."). Because Principe hasn't shown protected activity under Title VII, the motion for summary judgment is granted as to the Title VII retaliation claim. *See Smith v. Illinois Dep't of Transp.*, 936 F.3d 554, 560–61 (7th Cir. 2019).[31]

---

[31] Principe's second EEOC charge, filed on March 2, 2020, included an allegation of sexual harassment, *see* [70] at 53, and would be protected activity under Title VII. *See Tomanovich*

Principe's ADA and state-law retaliation claims[32] turn on this question: "Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?" *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 959 (7th Cir. 2021) (quoting *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) and *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). To show that he was fired[33] out of retaliation for filing his EEOC charge, Principe must go beyond suspicious timing and show other evidence that supports the inference of a causal link. *Id.* at 960 (quoting *Daza v. Indiana*, 941 F.3d 303, 309 (7th Cir. 2019)).

Plaintiff has done that by disputing the sincerity of defendants' asserted reasons for the termination, as discussed above. It's reasonable to infer that

*v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (the filing of an EEOC charge of discrimination satisfies the protected activity requirement). But Principe was fired two weeks earlier, on February 13, 2020. [71] ¶ 48. The Village couldn't have known about Principe's complaint of sex discrimination before it fired him, and so insofar as the Title VII claim is predicated on the second EEOC charge, it fails for a lack of causation. *See Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512 (7th Cir. 2021) (citations omitted) ("In order to demonstrate that a defendant was motivated to retaliate based on the plaintiff's protected activity, the plaintiff must first produce evidence that the defendant had actual knowledge of the protected activity.").

[32] Defendants challenge only the element of retaliatory motive for plaintiff's Illinois Whistleblower Act claim, *see* [50] at 14, and agree that a showing of causation under the ADA and Title VII satisfies the requirement for retaliatory motive under the IWA. *See id.* (citing *Keen v. Teva Sales & Mktg., Inc.*, 303 F.Supp.3d 690, 738 (N.D. Ill. 2018)).

[33] The adverse action analysis above (*see* 13–14 and note 16) applies to Principe's retaliation claims as well. *See Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 786–87 (7th Cir. 2007); *Keen v. Teva Sales and Marketing, Inc.*, 303 F.Supp.3d 690, 738–39 (citing *Grady v. FCA US LLC*, No. 15 C 50012, 2017 WL 5896894, at *9 (N.D. Ill. Mar. 30, 2017) and *Schlicksup v. Caterpillar, Inc.*, No. 09-CV-1208, 2010 WL 2774480, at *7 (C.D. Ill. July 13, 2010)) (concluding that the standards for retaliation under the IWA and Title VII are the same). The only adverse action Principe suffered for purposes of his retaliation claims was his termination.

defendants learned of Principe's EEOC charge before the termination but after the start of the investigation, *see* [79] ¶¶ 18, 21, 40, and the proximity between Principe's protected activity and his firing raises an initial suspicion of retaliatory motive. *See Daza v. Indiana*, 941 F.3d 303, 309 (7th Cir. 2019). A jury could also infer that the investigation was slipshod or half-hearted and that the Village lied about the reasons it fired him. *See Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 644–47 (7th Cir. 2013) (a sham investigation and pretextual reasons for termination supported an inference of retaliation); *Teruggi v. CIT Grp./Cap. Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013) (quoting *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010)) (a party establishes pretext with evidence that the employer's stated reason for the employment decision "was a lie—not just an error, oddity, or oversight."). Based on the entire record, a jury could infer that defendants retaliated against plaintiff for his first EEOC charge. *See Igasaki*, 988 F.3d at 959.

The motion for summary judgment is denied as to plaintiff's ADA and Illinois Whistleblower Act retaliation claims. Because Principe's state-law claims against Serpico and Piemonte survive, his claim for indemnification does too. *See* 745 ILCS 10/2-109; *Ybarra v. City of Chicago*, 946 F.3d 975, 981 (7th Cir. 2020).

## IV.    Conclusion

Defendants' motion for summary judgment, [50], is granted with respect to Principe's claims for harassment under the ADA and 42 U.S.C. § 1983. The motion is denied as to the claims for discrimination, retaliation, and indemnification. By March 3, 2022, the parties shall file a status report estimating the length of trial and stating their availability for trial in September 2022 or later.[34]

ENTER:

February 17, 2022

_____
Manish S. Shah
United States District Judge

---

[34] Any document previously filed under seal and referenced in this opinion should be unsealed; by March 10 the parties shall file a joint statement identifying the docket entries for unsealing or stating a basis for continued secrecy, with a proposed deadline for filing public versions of documents redacting only information covered by a relevant privilege or required by statute to be maintained in confidence. *See Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002); *see also* Fed. R. Civ. P. 5.2(a).